NO. 4-04-0653        Filed 6/16/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br>    Plaintiff-Appellee,<br>    v.<br>MICHAEL KIZER,<br>    Defendant-Appellant. | ) Appeal from<br>) Circuit Court of<br>) Vermilion County<br>) No. 01CF193<br>)<br>) Honorable<br>) Michael D. Clary,<br>) Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

Defendant, Michael Kizer, appeals from his convictions of driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 1998)) and driving under the influence of alcohol with a blood alcohol content of .08 grams per deciliter or more (625 ILCS 5/11-501(a)(1) (West 1998)). We vacate the latter conviction under the one-act, one-crime rule but otherwise affirm the trial court's judgment.

I. BACKGROUND

On October 15, 1999, the police issued defendant a uniform citation and complaint for driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 1998)). The case was docketed as People v. Kizer, No. 99-DT-411 (traffic case). On October 13, 2000, pursuant to section 103-5(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5(b) (West 2000)), defendant filed a request for a speedy trial in the traffic case. The State nol-prossed the traffic case on February 27, 2001.

On May 7, 2001, in the present case, No. 01-CF-193, the State filed an indictment charging defendant with reckless homicide (720 ILCS 5/9-3(a) (West 1998)). According to the indictment, he caused Kevin Andrews's death on October 15, 1999, by driving "at an excessive speed at a time when he had ingested alcohol" or "when he had ingested alcohol to a degree which rendered him incapable of safely driving." The indictment alleged the same conduct of DUI as the traffic case.

On May 29, 2001, in a motion for pretrial discovery pursuant to Supreme Court Rule 412 (188 Ill. 2d R. 412), defendant requested "[a]ny *** tangible objects which the State intends to use in a *** trial which were obtained from *** the accused" and "[a]ny material *** which tends to negate the guilt of the accused."

On March 4, 2002, defendant pleaded guilty to reckless homicide. On May 9, 2002, the trial court sentenced him to 30 months' probation.

The statute defining the offense of reckless homicide provided that "[i]n cases involving reckless homicide, being under the influence of alcohol *** at the time of the alleged violation shall be presumed to be evidence of a reckless act unless disproved by evidence to the contrary." 720 ILCS 5/9-3(b) (West 1998). On November 14, 2002, defendant filed a postconviction petition, arguing that the trial court should vacate his conviction of reckless homicide because in People v. Pomykala, 203 Ill. 2d 198, 209, 784 N.E.2d 784, 791 (2003), the supreme court declared the mandatory presumption in section 9-3(b) to be unconstitutional. On September 29, 2003, the State confessed the petition, and the court vacated the guilty plea and the sentence.

On October 3, 2003, defendant filed a motion to suppress a blood alcohol analysis. In this motion, defendant alleged that the Illinois State Police laboratory

- 2 -

analyzed a blood sample collected from him shortly after the accident. On June 13, 2001, in response to his discovery request, the State disclosed to him the blood alcohol content: 0.92 grams per deciliter. On September 30, 2003, defense counsel sent the State's Attorney a letter "requesting that said sample be tested by an independent toxicological laboratory because of the narrow margin of error of the [e]thanol findings over the legal limit of .08 [grams per deciliter], which presumes intoxication." The State could not comply with that request because the crime laboratory "destroyed said samples on or before September 30, 2001." Defendant claimed that the destruction of this evidence violated his right to due process under the fourteenth amendment (U.S. Const., amend. XIV), and, on the authority of People v. Newberry, 166 Ill. 2d 310, 652 N.E.2d 288 (1995), and Rule 415(g)(i) (134 Ill. 2d R. 415(g)(i)), he requested a suppression of the blood alcohol analysis.

On October 24, 2003, the trial court held a hearing on the motion for suppression. Cathy Anderson, a forensic scientist at the crime laboratory, testified that the two blood samples collected from defendant "were destroyed or discarded" on September 25, 2001. The State's Attorney never asked her to preserve them. She testified: "[W]e have a statement on the report that *** we will destroy [the blood samples] after a year unless we're otherwise notified, and *** we're behind[,] so it takes a couple of years before we actually destroy them." Because the laboratory had mixed a preservative with the samples and stored them in a refrigerator, it would have been possible to reanalyze them, had they not been destroyed. On November 10, 2003, the court denied defendant's motion for suppression because he never specifically asked the State to preserve the blood samples.

On December 1, 2003, pursuant to section 103-5 of the Code (725 ILCS 5/103-5 (West 2002)) defendant filed a request for "an immediate trial" in the present felony case.

On February 27, 2004, the State filed an amended information charging defendant with two counts. Count I was driving under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 1998)), and count II was driving under the influence of alcohol with a blood alcohol content of .08 grams per deciliter or more (625 ILCS 5/11-501(a)(1) (West 1998)). The State nol-prossed the indictment for reckless homicide. Both counts of the amended information alleged the same DUI as the traffic case and the indictment.

On March 1, 2004, defendant filed a motion to dismiss the charges with prejudice, pursuant to sections 103-5(d) and 114-1(a)(1) of the Code (725 ILCS 5/103-5(d), 114-1(a)(1) (West 2002)), on the ground that the State had failed to give him a trial within 160 days of his demand for a speedy trial in the traffic case. On April 14, 2004, the trial court denied the motion.

Trial on the amended information began on April 19, 2004. The evidence revealed that around 8 p.m. on October 15, 1999, defendant drove two of his friends, Andrews and Paul Nickle, from his home in Westville to a cookout in Indiana. They traveled in defendant's car and drank throughout the evening. When exiting a pizza restaurant in Indiana, Andrews was so intoxicated he had to be helped to the car. Defendant asked Nickle to drive because defendant believed that he himself had consumed too much alcohol. Nickle declined because he was suffering from the same disadvantage as defendant. At 11:30 p.m., on the return trip, the car veered off a

- 4 -

country road in Vermilion County, Illinois, rolled, and came to rest on its roof in a drainage ditch. Defendant and Nickle were thrown from the car but survived. Andrews was trapped in the backseat and died. In the emergency room, defendant told a nurse and doctor that he was the driver. After his discharge from the hospital, defendant tried to talk Nickle into telling the authorities that Andrews was the driver "[b]ecause he was dead." Nickle declined. Nickle testified he did not remember who was driving the car at the time of the accident, but he remembered that defendant was the driver earlier in the evening, from Westville to the departure from the restaurant. Defendant, who sustained a head injury, testified he remembered nothing of the accident and had no idea who was driving.

The jury found defendant guilty of both counts of the amended information. The trial court sentenced him to 18 months' probation and 75 hours' community service. This appeal followed.

## II. ANALYSIS

### A. Speedy Trial

Under section 103-5(b) of the Code, "[e]very person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date [the] defendant demands trial[,] unless delay is occasioned by the defendant." 725 ILCS 5/103-5(b) (West 2002). The remedy for failing to meet this requirement is dismissal of the charges. 725 ILCS 5/114-1(a)(1) (West 2002).

Defendant seeks dismissal of the charges because the State failed to bring him to trial within 160 days after he filed a demand for a speedy trial in the traffic case. He reasons that by vacating his guilty plea and the sentence in compliance with

- 5 -

Pomykala, the trial court returned him to "the same position [that] he [occupied] on March 3, 2002, the day prior to his guilty plea." According to defendant, the demand for a speedy trial that he filed in the traffic case on October 13, 2000, remained "in full force and effect" in this felony case. He argues that the supreme court's decision in People v. Quigley, 183 Ill. 2d 1, 697 N.E.2d 735 (1998), "commands this result."

In Quigley, "the State filed an information against [the] defendant charging him with a misdemeanor ***, driving while having a [blood alcohol content] of 0.10 or more [(625 ILCS 5/11-501(a)(1) (West 1992))]". Quigley, 183 Ill. 2d at 4, 697 N.E.2d at 737. Later, the State filed an indictment charging the defendant with aggravated DUI (625 ILCS 5/11-501(d)(3) (West 1992)). Quigley, 183 Ill. 2d at 5, 697 N.E.2d at 737. The misdemeanor and felony DUI charges were based on the same act. Quigley, 183 Ill. 2d at 9, 697 N.E.2d at 739. The trial court dismissed the misdemeanor DUI case on speedy-trial grounds, and the State never appealed the dismissal, making it res judicata. Quigley, 183 Ill. 2d at 5, 697 N.E.2d at 737.

One of the issues before the supreme court was whether the felony aggravated DUI charge was "subject to the same speedy-trial limitation" as the misdemeanor DUI charge: in other words, if the misdemeanor charge was dismissed on speedy-trial grounds, should the felony charge suffer the same fate? Quigley, 183 Ill. 2d at 13-14, 697 N.E.2d at 741. The answer was yes. The supreme court held that because the compulsory-joinder statute, section 3-3(b) of the Code (720 ILCS 5/3-3(b) (West 1992)), required the State to prosecute the felony charge in the same proceeding as the misdemeanor charge, the felony charge "was subject to the same speedy-trial limitation" as the misdemeanor charge. Quigley, 183 Ill. 2d at 16, 697 N.E.2d at 742.

"The State did not act in a timely manner to bring the two related charges in a single proceeding. The aggravated DUI charge [was] therefore barred on speedy-trial grounds." Quigley, 183 Ill. 2d at 16, 697 N.E.2d at 742.

Defendant compares his own traffic case to the misdemeanor case in Quigley; but we see a crucial difference between the two cases. In Quigley, in the misdemeanor case, the State's Attorney charged the defendant by filing an "information" (Quigley, 183 Ill. 2d at 4, 697 N.E.2d at 737), "a formal presentation of a criminal charge against [the defendant] by the State's [A]ttorney" (People v. Gahagan, 368 Ill. 475, 478, 14 N.E.2d 838, 839 (1938)). In defendant's traffic case, a police officer charged him via a uniform citation and complaint, i.e., a traffic ticket. See 134 Ill. 2d R. 552. The supreme court has held that "the compulsory-joinder provisions of section 3-3 do not apply to offenses that have been charged by the use of a uniform citation and complaint form provided for traffic offenses." (Emphasis added.) People v. Jackson, 118 Ill. 2d 179, 192, 514 N.E.2d 983, 988-89 (1987); see also People v. Mauricio, 249 Ill. App. 3d 904, 911, 619 N.E.2d 1348, 1353 (1993) (and cases cited therein).

As we held in People v. Crowe, 195 Ill. App. 3d 212, 218, 552 N.E.2d 5, 9-10 (1990)--a decision that is directly on point but which defendant does not cite in his initial brief--if section 3-3 does not require the State to prosecute a felony charge in the same proceeding as a related traffic offense charged by uniform citation and complaint, it must follow that a demand for a speedy trial in the traffic case has no effect in the felony case.

In a case that defendant does cite, People v. Williams, 94 Ill. App. 3d 241, 248-49, 418 N.E.2d 840, 846 (1981), the First District held that if a new and additional

charge arose from the same facts as the original charge and the State had knowledge of those facts at the commencement of the prosecution, trial had to begin by the same deadline that applied to the original charge. In People v. Gooden, 189 Ill. 2d 209, 218, 725 N.E.2d 1248, 1253 (2000), however, the supreme court limited the Williams rule to only those cases in which statutory law required the State to join the additional charge with the original charge.

Statutory law did not require the State to join the felonies in the present case with the misdemeanor charged by uniform citation and complaint in the traffic case. Therefore, under our decision in Crowe, defendant's demand for a speedy trial in the traffic case had no force in the present case. He seemed to implicitly recognize that fact on December 1, 2003, when he filed a new demand for a speedy trial. Fewer than 160 days passed between that date and the trial on April 19, 2004.

We further note that nol-prossing "terminates the case" and, "[a]s a general rule, *** toll[s] the running of the statutory speedy-trial period." Ferguson v. City of Chicago, 213 Ill. 2d 94, 102, 820 N.E.2d 455, 460 (2004). We find no error in the denial of defendant's motion to dismiss the charges on speedy-trial grounds.

B. Destruction of the Blood Samples

Defendant complains that in disposing of the blood samples, "the State destroyed crucial evidence before [he] had the opportunity to have the substance independently examined, thus depriving him of his constitutional right to due process *** and negating the State's compliance with Supreme Court Rule 412." Defendant relies on Newberry, among other authorities.

Understanding Newberry requires acquaintance with two federal decisions

- 8 -

that Newberry distinguished:  California v. Trombetta, 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984), and Arizona v. Youngblood, 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333 (1988).  In Trombetta, the defendants were convicted of DUI (Trombetta, 467 U.S. at 482-83, 81 L. Ed. 2d at 418, 104 S. Ct. at 2530-31), but the California Court of Appeals reversed their convictions and ordered new trials on the ground that the police had failed to preserve the breath samples, which, under California law, raised a presumption of intoxication.  Trombetta, 467 U.S. at 483-84, 81 L. Ed. 2d at 419, 104 S. Ct. at 2531-32.  According to the appellate court, due process demanded that the state preserve the breath samples for the defendants' use.  Trombetta, 467 U.S. at 483-84, 81 L. Ed. 2d at 419, 104 S. Ct. at 2531.

The Supreme Court of the United States disagreed for three reasons. First, in destroying the breath samples, the police officers had no apparent intent to suppress exculpatory evidence but acted in good faith and merely followed the normal practice in California.  Trombetta, 467 U.S. at 488, 81 L. Ed. 2d at 421-22, 104 S. Ct. at 2533.  Second, "the chances [were] extremely low that [the] preserved samples would have been exculpatory."  Trombetta,  467 U.S. at 489, 81 L. Ed. 2d at 422, 104 S. Ct. at 2534.  Third, the defendants had "alternative means of demonstrating their innocence," such as by pointing out the ways in which the "Intoxilyzer" could have malfunctioned. Trombetta, 467 U.S. at 490, 81 L. Ed. 2d at 423, 104 S. Ct. at 2534.

In Youngblood, the State of Arizona charged the defendant with kidnaping and sexually assaulting a 10-year-old boy.  Youngblood, 488 U.S. at 52, 102 L. Ed. 2d at 285-86, 109 S. Ct. at 334.  The boy's clothing was stained with semen, but the police failed to refrigerate the clothing or promptly test the stains to determine the identity of

the assailant; as a consequence, the state had no scientific proof of identity. Youngblood, 488 U.S. at 54, 102 L. Ed. 2d at 287, 109 S. Ct. at 335. Nevertheless, on the strength of the boy's testimony, the jury found the defendant guilty. Youngblood, 488 U.S. at 52, 102 L. Ed. 2d at 285, 109 S. Ct. at 334. The Arizona Court of Appeals reversed the conviction on due-process grounds (Youngblood, 488 U.S. at 54, 102 L. Ed. 2d at 287, 109 S. Ct. at 335,) even though it found no evidence of bad faith on the part of the state (Youngblood, 488 U.S. at 55, 102 L. Ed. 2d at 287, 109 S. Ct. at 335-36). The court reasoned that "that timely performance of tests with properly preserved semen samples could have produced results that might have completely exonerated [the defendant]." Youngblood, 488 U.S. at 55, 102 L. Ed. 2d at 287, 109 S. Ct. at 335.

The Supreme Court of the United States agreed with the appellate court "that there was no suggestion of bad faith on the part of the police": failing to refrigerate the clothing and promptly perform tests on the semen stains was, at worst, negligence. Youngblood, 488 U.S. at 58, 102 L. Ed. 2d at 290, 109 S. Ct. at 338. If the state had failed to disclose material exculpatory evidence, its good or bad faith would have been irrelevant. Youngblood, 488 U.S. at 57, 102 L. Ed. 2d at 289, 109 S. Ct. at 337. But such was not the situation before the Supreme Court, all one could say of the evidence was it might have been exculpatory. Therefore, contrary to the holding of the appellate court, the defendant had to show bad faith. The Supreme Court held: "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Youngblood, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.

In Newberry, the State charged the defendant with unlawful possession of

- 10 -

a controlled substance with intent to deliver. <u>Newberry</u>, 166 Ill. 2d at 312, 652 N.E.2d at 289. Defense counsel filed a discovery motion pursuant to Supreme Court Rule 412 (134 Ill. 2d R. 412), including "a request to examine all tangible objects that had been seized from [the defendant]." <u>Newberry</u>, 166 Ill. 2d at 312, 652 N.E.2d at 290. A year after this motion, an evidence technician--by sheer accident and without any bad faith--destroyed the alleged cocaine that the police had seized from the defendant. <u>Newberry</u>, 166 Ill. 2d at 313, 652 N.E.2d at 290. The trial court dismissed the charges, the appellate court affirmed the dismissal, and the issue before the Supreme Court of Illinois was whether this was a justifiable remedy for the destruction of the evidence. <u>Newberry</u>, 166 Ill. 2d at 313, 652 N.E.2d at 290. The supreme court held that due process "mandated" the dismissal. <u>Newberry</u>, 166 Ill. 2d at 311, 652 N.E.2d at 289. Further, the supreme court deemed the dismissal to be "an appropriate discovery sanction under Supreme Court Rule 415(g)(i) (134 Ill. 2d R. 415(g)(i))." <u>Newberry</u>, 166 Ill. 2d at 311, 652 N.E.2d at 289.

In arriving at its conclusion as to due process, <u>Newberry</u> distinguished <u>Trombetta</u> and <u>Youngblood</u> as follows: "Here, unlike <u>Youngblood</u> and <u>Trombetta</u>, the police destroyed the disputed substance after defense counsel had requested access to it in his discovery motion." <u>Newberry</u>, 166 Ill. 2d at 317, 652 N.E.2d at 292. Our supreme court held as follows:

> "Where evidence is requested by the defense in a discovery
> motion, the State is on notice that the evidence must be
> preserved, and the defense is not required to make an
> independent showing that the evidence has exculpatory

- 11 -

value in order to establish a due[-]process violation. [Citation.] If the State proceeds to destroy the evidence, appropriate sanctions may be imposed[,] even if the destruction is inadvertent. No showing of bad faith is necessary. [Citation.]" Newberry, 166 Ill. 2d 317, 652 N.E.2d at 292.

The Supreme Court of Illinois distinguished Trombetta and Youngblood on other grounds as well. Trombetta concluded that "[i]n all but a tiny fraction of cases, preserved breath samples would simply confirm the Intoxilyzer's determination that the defendant had a high level of blood-alcohol concentration at the time of the test." Trombetta, 467 U.S. at 489, 81 L. Ed. 2d at 422, 104 S. Ct. at 2534. By contrast, Newberry found "nothing in the record indicat[ing] that the laboratory procedures used to test the substance were especially reliable or that further testing would not have yielded different and more favorable results for [the defendant]." Newberry, 166 Ill. 2d at 316, 652 N.E.2d at 291. Unlike the defendant in Trombetta, the defendant in Newberry "lacked alternative means for showing that he was not guilty." Newberry, 166 Ill. 2d at 316, 652 N.E.2d at 291. Also, "[i]n Youngblood, the disputed material was not essential for establishing the defendant's guilt or innocence," and "[its] value was speculative," whereas, in Newberry, the disputed substance was "essential to and determinative of the outcome of the case." Newberry, 166 Ill. 2d at 315, 652 N.E.2d at 291.

In Illinois v. Fisher, 540 U.S. 544, 545, 157 L. Ed. 2d 1060, 1064, 124 S. Ct. 1200, 1201 (2004), another important case that defendant does not cite, the State

- 12 -

charged the defendant in October 1988 with possession of cocaine. Eight days later, the defendant filed a discovery motion for all physical evidence the State intended to use at trial. Fisher, 540 U.S. at 545, 157 L. Ed. 2d at 1064, 124 S. Ct. at 1201. He was released on bond, failed to appear in court, and remained a fugitive for the next 10 years. Fisher, 540 U.S. at 545, 157 L. Ed. 2d at 1064, 124 S. Ct. at 1201. He was apprehended in November 1999, whereupon the prosecution reinstated the charge of possessing cocaine. Fisher, 540 U.S. at 545, 157 L. Ed. 2d at 1064-65, 124 S. Ct. at 1201. Before trial, the State informed the defendant that in September 1999, pursuant to normal procedures, the police destroyed the substance they had seized from him during his initial arrest some 10 years earlier. Fisher, 540 U.S. at 546, 157 L. Ed. 2d at 1065, 124 S. Ct. at 1201. The trial court denied the defendant's motion to dismiss the charge, and a jury found him guilty. Fisher, 540 U.S. at 546, 157 L. Ed. 2d at 1065, 124 S. Ct. at 1201.

In reliance on Newberry, the First District reversed the conviction. Fisher, 540 U.S. at 546, 157 L. Ed. 2d at 1065, 124 S. Ct. at 1201. The appellate court distinguished Youngblood the same way Newberry had distinguished that case: the police in Youngblood did not destroy the evidence after a discovery motion by the defendant. Fisher, 540 U.S. at 546, 157 L. Ed. 2d at 1065, 124 S. Ct. at 1201. The appellate court found no evidence of bad faith on the part of the police, but it concluded that Newberry nevertheless dictated dismissal because, unlike the unrefrigerated clothing in Youngblood, the destroyed evidence was the defendant's only hope of exoneration and was essential to the outcome of the case. Fisher, 540 U.S. at 546-47, 157 L. Ed. 2d at 1065, 124 S. Ct. at 1201. Thus, the appellate court held that the

- 13 -

defendant was denied due process when he was tried after the destruction of the allege cocaine. Fisher, 540 U.S. at 547, 157 L. Ed. 2d at 1065, 124 S. Ct. at 1201.

The Supreme Court of the United States disagreed. The substance seized from the defendant was not material exculpatory evidence but merely potentially useful evidence. Fisher, 540 U.S. at 548, 157 L. Ed. 2d at 1066, 124 S. Ct. at 1202. Thus, contrary to the holding of the First District, the defendant had to show bad faith on the part of the police. Fisher, 540 U.S. at 547-48, 157 L. Ed. 2d at 1066, 124 S. Ct. at 1202. In a remark aimed directly at Newberry, the Supreme Court said:

"We have never held or suggested that the existence of a pending discovery request eliminates the necessity of showing bad faith on the part of police. Indeed, the result reached in this case demonstrates why such a per se rule would negate the very reason we adopted the bad-faith requirement in the first place: to 'limi[t] the extent of the police's obligation to preserve evidence to reasonable grounds and confin[e] it to that class of cases where the interests of justice most clearly require it.' [Citation.]

We also disagree that Youngblood does not apply whenever the contested evidence provides a defendant's 'only hope for exoneration' and is '"essential to and determinative of the outcome of the case."' App. to Pet. for Cert. 15-16 (citing Newberry, [166 Ill. 2d], at 315, 652 N. E. 2d, at 291). *** [T]he applicability of the bad-faith

- 14 -

requirement in Youngblood depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence. [Citation.] As we have held [citation], the substance destroyed here was, at best, 'potentially useful' evidence, and therefore Youngblood's bad-faith requirement applies." Fisher, 540 U.S. at 548-49, 157 L. Ed. 2d at 1066-67, 124 S. Ct. at 1202-03.

With respect to the due-process clause of the fourteenth amendment (U.S. Const., amend. XIV), Fisher supersedes Newberry because the Supreme Court of the United States is "the final arbiter on issues involving questions of the [f]ederal constitution" (2063 Lawrence Avenue Building Corp. v. Van Heck, 377 Ill. 37, 39, 35 N.E.2d 373, 374 (1941)). But the Illinois Constitution also has a due-process clause (Ill. Const. 1970, art. I, §2). State courts are free to interpret their own constitutional provisions more broadly than the Supreme Court of the United States interprets similar federal constitutional provisions. People v. McCauley, 163 Ill. 2d 414, 426, 645 N.E.2d 923, 930 (1994). The Supreme Court of Illinois "has not consistently applied the so-called lockstep doctrine as an assist in interpreting article I, section 2, the due[-]process clause in our [s]tate constitution." McCauley, 163 Ill. 2d at 440, 645 N.E.2d at 937. This appeal raises the following question: Would our own supreme court accept the analysis in Fisher when interpreting the due-process clause of the Illinois Constitution?

For four reasons, we predict the answer would be yes. First, when

- 15 -

discussing the concept of due process in <u>Newberry</u>, the supreme court made no distinction between the due-process clause of the Illinois Constitution and that of the federal constitution.  Second, in <u>People v. Pecoraro</u>, 175 Ill. 2d 294, 318, 677 N.E.2d 875, 887 (1997), the supreme court declined an invitation to interpret the Illinois due-process clause more broadly than the Supreme Court of the United States had interpreted the federal due-process clause, choosing "instead [to] adhere to the well-reasoned principles set forth in <u>Trombetta</u> and <u>Youngblood</u> for purposes of our state due[-]process clause."  Third, <u>Fisher</u> purported merely to interpret or clarify <u>Youngblood</u>, a decision that our own supreme court has repeatedly followed when assessing due process (<u>Pecararo</u>, 175 Ill. 2d at 318, 677 N.E.2d at 887; <u>People v. Hobley</u>, 159 Ill. 2d 272, 307, 637 N.E.2d 992, 1007-08 (1994); <u>People v. Ward</u>, 154 Ill. 2d 272, 298, 609 N.E.2d 252, 262 (1992)).  Fourth, in <u>People v. Caballes</u>, No. 91547, slip op. at 25 (May 18, 2006), ___ Ill. 2d ___, ___, ___ N.E.2d ___, ___ , the supreme court recently reaffirmed its commitment to the "limited lockstep analysis."  The language of our due-process clause (Ill. Const. 1970, art. I, §2) is almost identical to that of the federal due-process clause (U.S. Const., amend. XIV).  Unless defendant points out some contrary intention in the debates and committee reports of the Illinois constitutional convention (see <u>Caballes</u>, slip op. at 22, ___ Ill. 2d at ___, ___ N.E.2d at ___) or identifies some countervailing "state tradition and values as reflected by long-standing state case precedent" (see <u>Caballes</u>, slip op. at 25, ___ Ill. 2d at ___, ___ N.E.2d at ___), we will conclude that the Illinois due-process clause has the same meaning as the federal due-process clause.  Defendant has not done so.  Therefore, we conclude that the Supreme Court of Illinois would follow <u>Fisher</u> when interpreting the

- 16 -

due-process clause of the Illinois Constitution. See Newberry, 166 Ill. 2d at 329, 652 N.E.2d at 297 (Freeman, J., dissenting) ("Illinois adheres to the [f]ederal due[-]process analysis applicable in access-to-evidence cases").

The trial court never found, and defendant does not contend, that the State destroyed the blood sample in bad faith. Therefore defendant has failed to make the showing that Youngblood and Fisher require, and the court was correct in denying his motion to dismiss the charges on due-process grounds.

C. Admitting Evidence of Andrews's Death

Defendant requests that we reverse his conviction because the State introduced evidenced that Andrews died in the accident, even though defendant was not on trial for homicide. "A defendant's guilt must be established by legal and competent evidence." People v. Hope, 116 Ill. 2d 265, 275, 508 N.E.2d 202, 206 (1986). According to defendant, Andrews's death in the accident had no tendency to prove that defendant drove while intoxicated, but its only purpose was to inflame the jury against him. See Hope, 116 Ill. 2d at 275, 508 N.E.2d at 206; People v. Lewis, 165 Ill. 2d 305, 331, 651 N.E.2d 72, 84 (1995).

We agree that Andrews's death, by itself, had no tendency to prove that defendant drove while intoxicated. His death, however, was an indispensable part of a narrative the jury had to hear to determine who was the driver. The jury heard testimony that Andrews was a passenger. Because the identity of the driver was at issue, the jury would have been left wondering why no one called Andrews to testify. The lack of an explanation would have been unfair to the prosecution; the jury might have inferred that the prosecution chose not to call Andrews because he would have

- 17 -

been an unfavorable witness.  Further, Nickle testified that about two or three weeks after defendant was discharged from the hospital, defendant told him to say that Andrews was the driver because Andrews "was dead."  This was an important admission on defendant's part, which no conscientious prosecutor would have failed to present at trial.   The State could not have elicited evidence of this admission without informing the jury of Andrews's death.

We disagree with defendant that the probative value of this admission was substantially outweighed by its danger of unfair prejudice.  See People v. Eyler, 133 Ill. 2d 173, 218, 549 N.E.2d 268, 288 (1989).  The probative value was high.  By soliciting a cover-up, defendant showed a consciousness of guilt, i.e., an awareness that he himself was driving while intoxicated.  See People v. Doody, 343 Ill. 194, 207-08, 175 N.E. 436, 443 (1931).

## D. One Act, One Crime

The State concedes that defendant improperly received multiple convictions for one act of drunken driving.  See People v. Barcik, 357 Ill. App. 3d 1043, 1046, 830 N.E.2d 717, 720 (2005), vacated in part on other grounds, 217 Ill. 2d 569, 838 N.E.2d 2 (2005).  We find the concession to be warranted by the record and, accordingly, vacate defendant's conviction on count II of the amended information (driving a motor vehicle with a blood alcohol concentration of 0.08 grams per deciliter or more).

## E. Sufficiency of the Evidence

Defendant contends that the State failed to prove, beyond a reasonable doubt, that he was the driver.  We disagree. Defendant had been driving all evening.

Andrews was found in the backseat, where he had ridden all evening. When leaving the restaurant, Andrews could not walk, let alone drive, and Nickle declined to drive. Defendant admitted to two medical personnel that he was the driver. A jury could infer that defendant was the driver because the car belonged to him. See People v. Rhoden, 253 Ill. App. 3d 805, 812, 625 N.E.2d 940, 945 (1993).

## III. CONCLUSION

For the foregoing reasons, we affirm the conviction on count I of the amended information but vacate the conviction on count II.

Affirmed in part and vacated in part.

TURNER, P.J., and STEIGMANN, J., concur.