# Illinois Official Reports

## Appellate Court

---

*People v. Sandoval-Carrillo*, 2016 IL App (2d) 140332

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GUSTAVO SANDOVAL-CARRILLO, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0332 |
| Filed<br>Modified upon<br>denial of rehearing | May 24, 2016<br><br>July 12, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-CF-638; the Hon. Patricia Piper Golden and the Hon. James C. Hallock, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Jack Hildebrand, all of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant, Gustavo Sandoval-Carrillo, appeals the denial, after an evidentiary hearing, of his petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2010)). Defendant contends that (1) his conviction, on a guilty plea, of unlawful possession of more than 10 but not more than 30 grams of cannabis with the intent to deliver (720 ILCS 550/5(c) (West 2008)), a Class 4 felony, is void, because the State never charged him by indictment or information, as required by statute (725 ILCS 5/111-2(a) (West 2008)); and (2) his guilty plea violated due process, as the trial court did not admonish him properly. We affirm.

¶ 2 On March 1, 2009, a police officer signed and filed a "Complaint for Preliminary Hearing." Under the heading "COUNT 01," the form stated, "JOHN A. BARSANTI, State's Attorney of Kane County, charges that on or about February 28, 2009," defendant committed unlawful possession of cannabis (720 ILCS 550/4(d) (West 2008)), a Class 4 felony, in that he knowingly and unlawfully possessed more than 30 grams but not more than 500 grams of a substance containing cannabis. On March 1, 2009, defendant appeared in court. In written orders, the trial court found probable cause for defendant's warrantless arrest and detention; set bail at $5,000; and appointed the public defender to represent defendant. The third of these orders listed the State's counsel as "Belshan." On March 12, 2009, with defendant and the State both appearing by counsel, the court continued the cause to April 23, 2009. Also on that day, Paul Hendley entered his appearance as defendant's attorney. The cause was continued by agreement several more times.

¶ 3 On September 1, 2009, the trial court held a hearing at which the parties presented an agreement. Defendant would plead guilty to a count of unlawful possession of cannabis with intent to deliver, a Class 4 felony, so that he would be eligible to receive special first-offender probation under section 10 of the Cannabis Control Act (720 ILCS 550/10 (West 2008)). Hendley noted that, under "710 probation," defendant's compliance with the conditions of his 24-month probation would result in his discharge and the dismissal of the charge. See 720 ILCS 550/10(f) (West 2008). The assistant State's Attorney then handwrote changes to the "Complaint for Preliminary Hearing," initialed and dated them, and signed the form. The judge admonished defendant, heard the factual basis for the charge, accepted defendant's guilty plea, and imposed 24 months' first-offender probation as agreed.

¶ 4 On July 13, 2010, defendant, through counsel, filed his petition under the Act, supported by his affidavit and other documents. It alleged as follows. Originally, police officers stopped defendant's car and asked him to sign what they called a " 'warning.' " Because defendant spoke little English, he did not realize that the form actually gave consent to search his car. The search uncovered alleged cannabis, and defendant was arrested and charged. Later, he contacted Hendley, who took his case. During their first meeting, defendant told Hendley that he was an immigrant and wanted to know how the case would affect his immigration status. Hendley repeatedly assured him that although the charge was a felony he would resolve it in a way that would not endanger defendant's status.

¶ 5 The petition alleged further as follows. On September 1, 2009, Hendley met with defendant and told him that, if he pleaded guilty, he would not get a conviction and thus would have no problems with his immigration status; if he went to trial, he would surely lose and go to prison. Relying on Hendley's advice, defendant agreed to plead guilty and Hendley agreed

to allow the charge to be amended from simple possession to possession with intent to deliver, so that defendant was eligible for 710 probation. Hendley should have known that, under immigration law, a guilty plea to any drug offense is considered a conviction and grounds for deportation with no possibility of a waiver. During the plea hearing, the court told defendant that he was being placed on special probation and that, if he complied with all the conditions, no judgment of conviction would be entered on his record. The court also advised him that, if he was not a United States citizen and was "convicted" of the charge, he could face immigration consequences. Thus, the court apparently confirmed Hendley's assurance that successfully completing 710 probation would not result in a conviction and thus would not result in deportation. Based on these assurances, defendant agreed to the proposed plea.

¶ 6    The petition alleged further as follows. Sometime after entering his plea, defendant learned that he had pleaded guilty to "a more serious charge, which was not a misdemeanor." Also, because it was a drug charge, defendant was "quickly picked up by the United States Department of Homeland Security" and summarily deported. Defendant's family contacted Hendley for an explanation; he said that the judge must have mistakenly entered a conviction on defendant's record.

¶ 7    The petition contended that Hendley "clearly and tragically misinformed" defendant about the immigration consequences of his plea. The trial court's admonishments "only added to the misinformation that resulted in [defendant] entering a plea of guilty that was clearly based on erroneous information and thus [his] plea of guilty was not knowingly or voluntarily made and was made in violation of his right to effective assistance of counsel as well as his [constitutional] right to due process of law." Hendley's advice was unreasonable and prejudicial. The petition concluded, "[D]efense counsel's erroneous advice to [defendant] about the immigration consequences of pleading guilty coupled with the court's advise [*sic*] about how this plea would *not result in a conviction* caused [defendant's] plea to be made in violation of his right to effective assistance of counsel and in violation of his rights to due process of law under the Illinois and United States Constitution [*sic*]." (Emphasis in original.)

¶ 8    The trial court advanced the petition to the second stage under the Act. The State moved to dismiss the petition, contending that it did not make a substantial showing that Hendley had rendered ineffective assistance. Defendant filed a response in which he argued that Hendley had ignored well-settled federal law that made defendant's guilty plea grounds for summary deportation. The response did not assert that the petition had made a substantial showing that the trial court's admonishments denied defendant due process; the response did not mention the admonishments at all. The trial court denied the motion to dismiss, advanced the petition to the final stage under the Act, and held an evidentiary hearing.

¶ 9    Defendant's affidavit from his petition was admitted into evidence. Testifying at the hearing were Josefina Villa, who was present and acted as translator during defendant's discussion with Hendley immediately before the guilty-plea hearing; Hendley; and Irma Sandoval, defendant's wife. The trial court, crediting Hendley's testimony and generally discrediting Villa, Sandoval, and defendant, found that Hendley had repeatedly tried, without success, to negotiate a reduction in the charge from a felony to a misdemeanor. Contrary to what Villa testified, the court found that Hendley never told defendant that he could face a 25-year sentence (that term far exceeding the maximum); Hendley never assured defendant that, if he pleaded guilty, he would have no immigration problems; Hendley advised defendant more than once to consult an immigration lawyer; immediately before the guilty-plea hearing,

- 3 -

Hendley explained to defendant the consequences of pleading guilty; and, at that time, Hendley told defendant that a guilty plea could result in deportation and that the judge would tell him the same thing.

¶ 10 After the hearing, the parties submitted detailed written closing arguments. In his argument, defendant contended that he had proved that Hendley had rendered ineffective assistance, because (1) the evidence showed that Hendley did not understand, or advise defendant properly of, the immigration consequences of his plea to possession with intent to deliver, and (2) he had had a good chance of prevailing on a motion to suppress evidence. Defendant did not contend separately that the trial court's admonishments, in themselves, denied him due process. In arguing that Hendley had performed ineffectively, defendant asserted that the evidence showed that, during the guilty-plea hearing, Hendley failed to inform the court that he had advised defendant of the possibility of deportation. The argument continued, "The judge did advised [*sic*] [defendant] that a conviction for a felony could have adverse immigration consequences. That advice only lulled [defendant] into a false sense of security because he had been told by Mr. Hendley that he was not going to have a conviction on his record." No other reference to the admonishments appears in the argument.

¶ 11 The State's argument concentrated on the claim that Hendley was ineffective. It asserted that (1) Hendley had warned defendant that deportation was a possible consequence of his plea and (2) the trial court properly admonished defendant that deportation was a possible consequence of his plea, and defendant stated that he was satisfied with the explanation.

¶ 12 The trial court held that defendant had failed to prove his ineffective-assistance claim because he had not shown prejudice. Notably, although his plea of guilty to the amended charge did not prevent his deportation, there had been no evidence of what would have happened had he chosen otherwise, such as by pleading guilty to the original charge (also a felony drug offense) or going to trial against a strong State case. The court did not address whether the admonishments at the guilty-plea hearing were deficient. The court denied defendant's petition. Defendant did not move to reconsider or request a ruling on any claim that the admonishments had violated his constitutional rights. He timely appealed.

¶ 13 The State contends that defendant lacked standing to petition under the Act, because, on July 13, 2010, he was no longer "imprisoned in the penitentiary," having been deported from the United States. See 725 ILCS 5/122-1(a) (West 2010) ("Any person imprisoned in the penitentiary" may institute proceedings under the Act). The State concedes that a person who is on probation for a felony has standing to file a petition under the Act (*People v. Carrera*, 239 Ill. 2d 241, 245-46 (2010)) and that, on July 13, 2010, defendant's term of probation had not expired. Nonetheless, the State argues, when he filed his petition, defendant had been deported by the federal government, and thus his liberty had not been "curtailed to a degree by the state." *Id.* at 246.

¶ 14 Defendant responds in part that his first claim, that his conviction is void for want of jurisdiction, is properly before this court regardless of his standing to petition under the Act. We agree. In *People v. Vasquez*, 2013 IL App (2d) 120344, we held that a defendant who had filed a petition under the Act after he had completed his sentence was not barred from appealing and raising, for the first time, a claim for a monetary sentencing credit. We explained that the defendant's lack of standing had not deprived the trial court of subject-matter jurisdiction. *Id.* ¶¶ 16-17. Because an application for a monetary credit may be made at any time, including on appeal from the denial of postconviction relief (*People v. Caballero*, 228 Ill.

2d 79, 83, 88 (2008)), we could decide the claim, as the defendant's appeal from the dismissal of the petition was properly before us. *Vasquez*, 2013 IL App (2d) 120344, ¶ 17.[1] Thus, defendant's claim that his conviction is void is properly before us, as a voidness argument may be raised at any time if the proceeding is properly before the court (*People v. Flowers*, 208 Ill. 2d 291, 308 (2003)). Defendant's alleged lack of standing did not deprive the trial court of jurisdiction, and thus his appeal is properly before us.

¶ 15    Further, we hold that neither defendant's first claim nor his second claim, that he was denied due process when the trial court did not admonish him properly, was barred by lack of standing. The State relies on a supreme court opinion holding only that, if a petitioner has *already completed* his sentence, he does not acquire standing under the Act merely because he faces deportation or has been deported. See *Carrera*, 239 Ill. 2d at 246. In *Carrera*, the court explained that the defendant had fully served his Illinois sentence and that any restraint on his liberty resulting from the act of a federal agency not under the control of Illinois courts did not make him "imprisoned" (725 ILCS 5/122-1(a) (West 2006)) within the meaning of the Act. *Carrera*, 239 Ill. 2d at 253; see *People v. Rajagopal*, 381 Ill. App. 3d 326, 331 (2008). *Carrera*'s rule is thus within the established principle that, if a petitioner has fully served his Illinois sentence, he lacks standing to petition under the Act. See *Carrera*, 239 Ill. 2d at 246; *People v. Martin-Trigona*, 111 Ill. 2d 295, 300 (1986).

¶ 16    The State would stretch this established principle to a petitioner whose sentence has not expired when he files his action. We are dubious of any such extension without a clearer signal from the supreme court that it would be proper. Thus, we reject the State's standing argument.

¶ 17    We turn to defendant's first claim: that his conviction is void because the trial court never obtained jurisdiction over the case. Defendant phrases his argument in terms of subject-matter jurisdiction, but he also relies on authority addressing when the failure to follow the statutory commands for filing charges deprives the trial court of personal jurisdiction over a party. Therefore, out of caution and to resolve any questions about any defects in either type of jurisdiction, we address whether the alleged defect in the proceedings deprived the trial court of subject-matter jurisdiction or personal jurisdiction over either party.

¶ 18    Defendant argues that, because by statute a felony prosecution must be commenced by the State's Attorney via the filing of an indictment or information, the "complaint for preliminary hearing" that the police officer filed, apparently without the direction, knowledge, or acquiescence of the State's Attorney's office, never invoked the trial court's jurisdiction. Defendant contends that this failure to charge him as required meant that the trial court was never presented with a justiciable matter and thus never acquired subject-matter jurisdiction. Defendant's argument presupposes that a proper charging instrument is a prerequisite to the trial court's subject-matter jurisdiction. The State responds in part that the trial court's subject-matter jurisdiction was created by the Illinois Constitution, which gives trial courts jurisdiction over all justiciable matters (Ill. Const. 1970, art. VI, § 9), and that the filing of a proper indictment or information was not needed to create a justiciable matter. The State also responds that, by signing the amended complaint, the assistant State's Attorney satisfied the statute.

---

[1]We elected not to follow an opinion to the contrary (*People v. Vinokur*, 2011 IL App (1st) 090798, ¶ 18), explaining that that opinion improperly conflated standing and subject-matter jurisdiction. *Vasquez*, 2013 IL App (2d) 120344, ¶ 21.

¶ 19    Defendant is correct that, under the law at the pertinent time, "All prosecutions of felonies shall be by information or indictment." 725 ILCS 5/111-2(a) (West 2008). However, it does not follow that the alleged failure to follow the statute deprived the trial court of subject-matter jurisdiction. In contending that it did, defendant relies solely on a 44-year-old opinion of the appellate court, *People v. Allen*, 8 Ill. App. 3d 176 (1972). There, the court did hold that an indictment that did not state or describe an actual offense (see Ill. Rev. Stat. 1969, ch. 38, § 111-3) deprived the trial court of subject-matter jurisdiction, for which a "valid charge" was a prerequisite. *Allen*, 8 Ill. App. 3d at 178.

¶ 20    *Allen* is distinguishable–and more fundamentally, it has long since ceased to be good law. Here, the "Complaint for Preliminary Hearing" did state an actual offense, possession of more than 10 but not more than 30 grams of a substance containing cocaine. More important, although it does not appear that *Allen* has been explicitly overruled or disapproved, it has been the law for many years that a trial court's subject-matter jurisdiction, which is " 'the power of a court to hear and determine cases of the general class to which the proceeding in question belongs' " (*People v. Hughes*, 2012 IL 112817, ¶ 20 (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002))), does not flow from the validity of a charge but from our state constitution. *Id.* ¶ 21. Thus, as our supreme court held 20 years ago (in a case that neither party cites), the fact that a defendant was never properly charged does not deprive the trial court of jurisdiction. *People v. Benitez*, 169 Ill. 2d 245, 255-56 (1996); see *People v. Gilmore*, 63 Ill. 2d 23, 26 (1976).

¶ 21    There can be no question that here the trial court had subject-matter jurisdiction over this case, as it had the authority to decide the general class of cases to which this one belonged and it was presented with a " 'justiciable matter,' " *i.e.*, " 'a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests.' " *Hughes*, 2012 IL 112817, ¶ 20 (quoting *Belleville Toyota*, 199 Ill. 2d at 335). Thus, we reject defendant's argument that his guilty plea to the amended charge is void for lack of subject-matter jurisdiction in the trial court.

¶ 22    We turn to whether the judgment is void for want of personal jurisdiction. There is case authority holding criminal proceedings void for failing to follow the statutory requirement that every felony prosecution be commenced by the filing of either an indictment or an information by the State's Attorney. We conclude, however, that these cases are distinguishable, because, in this case, the State's Attorney did indeed file an information against defendant.

¶ 23    In *People v. Pankey*, 94 Ill. 2d 12 (1983), the trial court dismissed, on double-jeopardy grounds, an information charging the defendant with aggravated battery. *Id.* at 12-13. In the original proceeding on which the dismissal was based, a municipal law-enforcement officer had arrested the defendant and issued a traffic complaint that purportedly charged him with aggravated battery, a felony. *Id.* at 13. Per the complaint, the defendant appeared in court the next day, but no representative of the State's Attorney's office appeared. The defendant pleaded guilty to aggravated battery and was fined. *Id.*

¶ 24    The following day, the State's Attorney's office filed the information, and the defendant moved to dismiss the charge. In response, the State contended that the first judgment was void, because, by statute, a felony prosecution could be initiated only by information or indictment and only by the State's Attorney. *Id.* at 14. Finding inapplicable an exception for when the defendant procured the unauthorized prosecution with the intent to avoid the sentence that

might otherwise be imposed (*id.*; see Ill. Rev. Stat. 1979, ch. 38, § 3-4(d)(2)), the trial court agreed with the defendant and dismissed the charge. The appellate court affirmed. *Pankey*, 94 Ill. 2d at 14-15.

¶ 25   The supreme court reversed, holding that double jeopardy did not bar the prosecution by information, because the original proceeding had been void for lack of jurisdiction of the State. The court's plurality opinion reasoned as follows. Noting that all criminal actions must be commenced and prosecuted by the State's Attorney's office (*id.* at 16; see Ill. Rev. Stat. 1979, ch. 14, ¶ 5(1)) and that all prosecutions of felonies must be by information or indictment (*Pankey*, 94 Ill. 2d at 17; see Ill. Rev. Stat. 1979, ch. 38, § 111-2(a)), the plurality explained that, although the trial court had "had [subject-matter] jurisdiction of an aggravated-battery offense, it had no authority to accept a plea of guilty to aggravated battery and enter judgment thereon where no such charge was before the court." *Pankey*, 94 Ill. 2d at 17.

¶ 26   The crucial consideration was that, although the defendant had not acted in bad faith in the first proceeding, the record showed that, when he entered his guilty plea, "[n]either the State's Attorney nor his assistant initiated any such prosecution on that date" (*id.*) and the State's Attorney neither knew of nor acquiesced in "any such proceeding in the name of the People" (*id.* at 17-18). The police officer had had no authority to assume the role of the State's Attorney's office. *Id.* at 18. Therefore, "the State's Attorney [having] neither appeared nor acquiesced in the officer's action, it could not be said that the [trial] court ever acquired jurisdiction over the State in the original proceeding." *Id.* at 19. The plurality thus held that double jeopardy did not bar the information. *Id.* at 19-20. One justice concurred specially, agreeing with the plurality's reasoning but also concluding that, in the original proceeding, the trial court had never acquired subject-matter jurisdiction. *Id.* at 21 (Moran, J., specially concurring).

¶ 27   In *People v. Rolland*, 221 Ill. App. 3d 195 (1991), on the evening of November 18, 1989 (or the morning of the next day), a state trooper arrested the defendant and issued him a citation charging him with the misdemeanor battery of the victim and setting an appearance date of December 20, 1989. On November 20, 1989, the trooper filed a verified complaint. *Id.* at 196. The victim's condition soon deteriorated, and the State's Attorney's office decided to dismiss the misdemeanor charge and file felony charges against the defendant. Before it could do so, however, on December 20, 1989, the defendant appeared in court and was told that no new charges had been filed against him. Shortly afterward, a deputy sheriff who routinely filled out guilty-plea forms asked the defendant what he wanted to do; the defendant said that he would plead guilty and pay the fine that the deputy sheriff had suggested. The court accepted his plea and imposed the fine. *Id.* at 197.

¶ 28   A month later, the State moved to vacate the judgment. The trial court granted the motion; the State dismissed the misdemeanor charge and indicted the defendant on the felony charges; the defendant moved to dismiss the charges, based on double jeopardy; and the trial court granted the motion. *Id.* The State appealed. *Id.* at 196.

¶ 29   The appellate court affirmed. Although the State argued that the judgment on the guilty plea was void, the court accepted the trial court's finding that the deputy sheriff had acted with the State's Attorney's "implied authority," meaning that the judgment was not void under *Pankey*. *Id.* The court noted that the State's Attorney's office had long known about and acquiesced in the deputy sheriff's conduct in "handl[ing] dockets." *Id.* Therefore, double jeopardy had attached, and the felony prosecution was barred. *Id.* at 199.

¶ 30    The present case differs from both *Pankey* and *Rolland*, but, for our purposes, these opinions militate in favor of holding that the judgment is not void. We note that, unlike in both *Pankey* and *Rolland*, it is defendant who requests that the judgment be held void, even though he must rely on authority setting out when *the State* may obtain a vacatur of a judgment on the ground that the trial court never acquired jurisdiction over *it*. (Defendant cannot maintain that the trial court never obtained personal jurisdiction over *him*, as he appeared before it. See *People v. Raczkowski*, 359 Ill. App. 3d 494, 498 (2005).)

¶ 31    Leaving aside this potential problem, we see a much more obvious and straightforward one: unlike in *Pankey*, but similar to *Rolland*, the State here knew about and acquiesced in the proceeding. Although it did so after the officer filed his complaint for a preliminary hearing, instead of before, there is no doubt that, when defendant entered his guilty plea, the State had fully ratified and authorized the prosecution and accepted the consequences thereof.

¶ 32    Here, the officer filed the complaint, which, by itself, would have been insufficient to commence a felony prosecution, absent some evidence that the State had known of and acquiesced in the action. However, when defendant appeared in court, the assistant State's Attorney amended the complaint and initialed the changes. The trial court then proceeded to hold a preliminary hearing and the cause proceeded.

¶ 33    This case is thus unlike *Pankey*, the holding of which rested on the undisputed fact that, before the defendant entered his plea, the State's Attorney's office had neither known about nor acquiesced in the proceedings. Here, the assistant State's Attorney did participate and acquiesce in the proceedings before the defendant pleaded guilty: she amended the complaint and proffered the plea agreement to the court. Moreover, the State's Attorney's office participated in the negotiations that culminated in the plea agreement. Thus, insofar as defendant may raise the alleged failure of the trial court to obtain personal jurisdiction over the State as a ground to void the judgment against him, *Pankey* does not help him.

¶ 34    In this respect, this case is much closer to *Rolland*, in which the State knew about and acquiesced in the proceedings that were commenced by the officer's filing the complaint. In *Rolland*, knowledge and acquiescence were inferable from the practices of the State's Attorney's office before the officer acted. Here, knowledge and acquiescence were directly proved by the actions of the State's Attorney's office after the officer filed the complaint. In both instances, however, the State's Attorney's office knew of and approved the proceedings before the defendant pleaded guilty and the trial court entered judgment.

¶ 35    We recognize that *Rolland* differs from this case in one potentially crucial respect: there, the charge was a misdemeanor, which could be brought by a complaint, whereas here, the charge was a felony, which required the filing of an indictment or information by the State's Attorney. Although the statute does require the filing of an indictment or "information," it does not define the latter term. Nonetheless, it has long-accepted definitions: "a formal presentation of a criminal charge against a person by the State's attorney [*sic*] instead of by a grand jury" (*People v. Gahagan*, 368 Ill. 475, 478 (1938); see also *People v. Kizer*, 365 Ill. App. 3d 949, 955 (2006)); and " 'a charge of a crime filed in the office of the clerk of a court by the proper law officer of the government' " (*People ex rel. Lyman v. Smith*, 352 Ill. 496, 499 (1933) (quoting Samuel T. Spear, The Law of Extradition, International and Inter-state 363 (3d ed. 1885)).

¶ 36    These definitions differ slightly but are entirely consistent and straightforward. They establish that defendant was indeed charged by information, albeit not at the earliest possible

moment. When the assistant State's Attorney presented the trial court with the amended "complaint for a preliminary hearing," initialed by her as the agent of the State's Attorney, she filed an "information" and thus properly commenced the prosecution. Therefore, defendant was prosecuted in accordance with the applicable statute and the judgment was not void for want of personal jurisdiction. We have already held that the judgment was not void for want of subject-matter jurisdiction. Thus, defendant's first claim of error fails.

¶ 37    Having held that the amended complaint sufficed as an "information" on which to proceed with a felony prosecution, we note that this was obviously not the best practice. We urge more careful and straightforward compliance with the required procedures in the future, so as to avoid the difficulties involved in a case such as this.

¶ 38    We turn to defendant's second claim of error: that the trial court erred in denying his petition's contention that the trial court in the criminal proceeding denied him due process and rendered his plea involuntary by admonishing him incorrectly about the possible immigration consequences of his decision.

¶ 39    The State argues that defendant has forfeited this claim by failing to raise it in his petition. See 725 ILCS 5/122-3 (West 2010) (claim not raised in original or amended petition is forfeited); *People v. Jones*, 211 Ill. 2d 140, 148 (2004) (foregoing provision bars raising claim for first time on appeal). Defendant responds that he did raise this claim in his petition. He cites the passage in the petition asserting that the trial court's admonishments "only added to the misinformation that resulted in [defendant] entering a plea of guilty that was clearly based on erroneous information and thus [his] plea of guilty was not knowingly or voluntarily made."

¶ 40    We conclude that, if, *arguendo*, defendant's petition raised a separate claim that the trial court's admonishments violated his constitutional rights, he abandoned that claim. In opposing the State's motion to dismiss, defendant's response did not mention this potential claim at all. At the third stage of the proceedings, his written argument referred to the admonishments briefly, but only to support his contention that Hendley's allegedly deficient representation prejudiced him. The trial court's detailed ruling denying the petition did not address whether the admonishments in themselves violated defendant's constitutional rights; defendant did not move to reconsider the judgment or otherwise request the trial court to rule on this purported issue. Under these circumstances, defendant abandoned any separate claim based on the admonishments. See generally *Morawicz v. Hynes*, 401 Ill. App. 3d 142, 147 (2010); *Mortgage Electronic Systems v. Gipson*, 379 Ill. App. 3d 622, 628 (2008). Defendant having seen no need to pursue this claim at the trial level, we shall not address it here. We say only that, even if the issue had been raised, the record belies defendant's argument. The trial court did admonish defendant that a plea of guilty could result in deportation. There was no incorrect or improper admonishment, and thus the abandoned claim was not meritorious and the failure to argue this claim was not unreasonable assistance of postconviction counsel.

¶ 41    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978).

¶ 42    Affirmed.