2016 IL App (3d) 130683

Opinion filed February 10, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, McDonough County, Illinois. |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-13-0683 Circuit No. 12-CF-116 |
| | ) ) | The Honorable |
| BRANDON M. LITTLE, | ) ) | Raymond A. Cavanaugh and William E. Poncin, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice Wright concurred in the judgment and opinion.

**OPINION**

¶ 1     After a stipulated bench trial, defendant, Brandon Little, was convicted of felony driving while license suspended or revoked (DWLS) (625 ILCS 5/6-303(d) (West 2010)) and was sentenced to one year conditional discharge and 60 days in county jail. Defendant appeals, arguing that the trial court erred in denying his pretrial motion to quash his arrest and suppress evidence. We affirm the trial court's judgment.

¶ 2                                                            FACTS

¶ 3        On August 28, 2011, defendant was arrested and charged with DWLS. Prior to trial, he filed a motion to quash his arrest and suppress evidence (motion to suppress). An evidentiary hearing was held on the motion.

¶ 4        The evidence presented at the hearing can be summarized as follows. Mike Pilat testified that on August 28, 2011, at about 11 p.m., he was working as a deputy sheriff and was dispatched to the residence of Stanford O'Hern in McDonough County, Illinois, regarding a criminal trespass complaint. Pilat was in his sheriff's uniform and driving his squad car at the time. It took him about 10 to 12 minutes to get to the residence. Upon his arrival at the residence, Pilat met with O'Hern. O'Hern told Pilat that while he was at one of his nearby hunting cabins, he heard somebody across the road trespassing and "running their coon dogs" (training their dogs to hunt raccoons). O'Hern did not see or hear any human activity but only heard dogs running through his property. The cabin property was about 3½ miles away from O'Hern's residence and was owned by O'Hern. The property where the trespass allegedly took place was across the road from the hunting cabin and was owned by members of O'Hern's family. The property had wooded areas on it, and O'Hern farmed the property and kept cattle there.

¶ 5        O'Hern told Pilat that Pilat's squad car would not make it down the road in that area, so O'Hern took Pilat to the location in his own truck. As they were almost to the hunting cabin, they passed a pickup truck traveling in the opposite direction. Pilat could see the hunting cabin at that time. It was about 100 to 150 yards away. When they drove past the pickup truck, Pilat noticed the truck had a dog box (a metal crate used to carry animals) in the back. Pilat had O'Hern turn around so that Pilat could run the license plate of the truck. When they turned around, Pilat could see the shine of an animal's eyes coming from inside the dog box. O'Hern

followed the truck, and Pilat called the vehicle's license plate into dispatch using his cell phone. When they got to an intersection and the truck stopped at a stop sign, Pilat flashed his flashlight on and off at the driver to see if the driver would stop his vehicle. Defendant, who was the driver of the vehicle, stopped the vehicle and got out. That was at about 11:32 p.m.

¶ 6        O'Hern pulled up next to the vehicle, and Pilat got out and spoke to defendant. Pilat introduced himself and advised defendant of the trespassing complaint. Pilat asked defendant for his driver's license, and defendant responded that he did not have one. Pilat asked defendant if his license was suspended or revoked, and defendant stated that he believed his license was revoked. Defendant told Pilat that he had permission to be in the area where he was running his dogs and provided the name of the person who he believed had been on the O'Hern property that evening. Defendant was subsequently arrested for DWLS.

¶ 7        Defendant testified at the hearing that he was running dogs on "Betty McCarty" and that he had permission to be there. As he was driving down the road, he saw a truck parked by the hunting cabin with its lights on. The truck followed him, and he got out of the car when he saw the light flash on and off because he thought it was a game warden and that he was required to stop. According to defendant, the direction he was coming from was nowhere near where Pilat said that the trespassing occurred, over by Vermont Lake. Defendant stated further that Pilat would not have been able to see inside his dog box that evening and that on any given night, four or five people would be out raccoon hunting in that area.

¶ 8        Pilat was recalled by the State and said that he did not believe that he had told defendant that evening that the trespass had occurred over by Vermont Lake. According to Pilat, when he first saw defendant's vehicle, Pilat and O'Hern were about 75 yards from the hunting cabin

3

heading west and defendant's vehicle was on the same road heading east and was about 100 to 150 yards west of the cabin.

¶ 9        At the conclusion of the hearing, the trial court denied the motion to suppress. In doing so, the trial court found that Pilat had made an investigatory stop on defendant's vehicle for a possible criminal trespass to real property and that the stop had been supported by reasonable suspicion. The trial court noted that defendant's vehicle was the only vehicle in that area and that "it just happen[ed] to have coon dogs in back."

¶ 10       After changing attorneys, defendant filed a motion asking the trial court to reconsider its ruling on the motion to suppress. In the motion to reconsider, defense counsel conceded that Deputy Pilat had a reasonable suspicion that the driver of the vehicle, who turned out to be defendant, was the same person who was being investigated for a possible trespass. Defense counsel argued, however, that the stop was invalid because Pilat did not have a reasonable suspicion that a criminal trespass to real property had been committed since there was no evidence presented at the hearing on the motion to suppress that "no trespassing" signs were posted or that defendant had received prior notice that entry on the property was forbidden (collectively referred to as evidence of notice), as required under the law for a criminal trespass to real property to occur (see 720 ILCS 5/21-3(a)(2), (a-5), (b) (West 2010)). The State agreed that no evidence of notice had been presented at the suppression hearing but argued that such evidence was not required. The trial court ultimately denied the motion to reconsider finding that Pilat had reasonable suspicion to stop defendant and that evidence of notice was not required for the investigatory stop.

¶ 11       The parties later proceeded to a stipulated bench trial on the felony DWLS charge. The judge who presided over the stipulated bench trial was not the same judge who had presided over

4

the hearing on the motion to suppress. The parties stipulated that Deputy Pilat would testify in accordance with the information contained in his police report as summarized by the State. The parties also stipulated that the State would introduce a certified copy of defendant's driving abstract, which showed that on June 16, 2010, defendant was previously convicted of DWLS, and that the original revocation was in effect due to a DUI conviction. Based upon the stipulated evidence presented, the trial court found defendant guilty of felony DWLS. Pursuant to the sentencing agreement of the parties, the trial court sentenced defendant to one year of conditional discharge and 60 days in county jail with the jail sentence stayed pending appeal. This appeal followed.

¶ 12                                                    ANALYSIS

¶ 13        On appeal, defendant argues that the trial court erred in denying his motion to suppress evidence. Defendant asserts that the motion should have been granted because Deputy Pilat did not have reasonable suspicion to believe that defendant had trespassed onto O'Hern's land and to make an investigative traffic stop on defendant's vehicle for that reason. Defendant contends that reasonable suspicion was lacking because: (1) no one saw defendant trespass onto the property; (2) more than 30 minutes had passed from when the alleged trespass had occurred until the traffic stop was made; (3) defendant was not in the same area as where the alleged trespass had occurred; and (4) no evidence of notice was presented, as required under the law. Calling this case as one of first impression in Illinois, defendant asks that we look at certain cases from another state in support of his conclusion—that evidence of notice is required for a police officer to have reasonable suspicion to believe that a criminal trespass to real property has been committed. For all of the reasons stated, defendant asks that we reverse the trial court's ruling on

5

the motion to suppress and, because the State would be unable to prove its case without the suppressed evidence, that we reverse his conviction and sentence outright.

¶ 14    The State argues that the trial court's ruling was proper and should be upheld. The State asserts first that, under the facts of this case, Deputy Pilat had reasonable suspicion to believe that defendant had trespassed onto O'Hern's property because: (1) there was a live complaint of someone trespassing and running dogs on O'Hern's property; (2) defendant's vehicle was the only vehicle in the area at that time; (3) defendant's vehicle had a dog box in the back of it; and (4) the dog box had dogs inside of it. The State asserts further that a police officer does not have to have evidence of notice to have reasonable suspicion to investigate a complaint of criminal trespass to real property; that is, that a police officer is not required to satisfy all of the elements of criminal trespass to real property to have reasonable suspicion to investigate a complaint of that offense. Second, and in the alternative, the State argues that reasonable suspicion was not required in this case because the encounter between Deputy Pilat and defendant was a consensual encounter. For all of the reasons set forth, the State asks that we affirm the trial court's denial of defendant's motion to suppress.

¶ 15    A reviewing court applies a two-part standard of review to a trial court's ruling on a motion to suppress evidence. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *People v. Gaytan*, 2015 IL 116223, ¶ 18. The trial court's findings of fact are given great deference and will not be reversed on appeal unless they are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. However, as to the trial court's ultimate legal ruling of whether reasonable suspicion or probable cause exists and whether suppression is warranted, *de novo* review applies. *Id.*; *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). The reviewing court

is free to make its own assessment of those legal issues, based upon the findings of fact, and to draw its own conclusions. *Hackett*, 2012 IL 111781, ¶ 18.

¶ 16    The fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution guarantee citizens the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *Gaytan*, 2015 IL 116223, ¶ 20. A police-conducted traffic stop of a motor vehicle, even for a brief and limited purpose, is a seizure under the law and, as such, is subject to the fourth amendment's reasonableness requirement. *People v. Close*, 238 Ill. 2d 497, 504-05 (2005); *Gaytan*, 2015 IL 116223, ¶ 20; *Hackett*, 2012 IL 111781, ¶ 20. Although traffic stops are frequently supported by probable cause to believe that a traffic violation has occurred, because of the brevity involved, they are more analogous to a *Terry* investigative stop (see *Terry v. Ohio*, 392 U.S. 1 (1968)) than to a formal arrest and are, therefore, analyzed under the principles of *Terry*. *Hackett*, 2012 IL 111781, ¶ 20; *Close*, 238 Ill. 2d at 505. Under *Terry*, a police officer may conduct a brief, investigatory stop of a person if the officer reasonably believes that the person has committed, or is about to commit, a crime. See *Close*, 238 Ill. 2d at 505; see also 725 ILCS 5/107-14 (West 2010). The purpose of that stop is to allow the officer to briefly investigate the circumstances that provoke suspicion and to either confirm or dispel that suspicion. *Id*. at 512. Thus, to be valid for fourth amendment purposes, a traffic stop must, at the very least, be supported by reasonable suspicion. *Hackett*, 2012 IL 111781, ¶ 20. The officer's belief need not rise to the level of suspicion required for probable cause but must be more than an inarticulate hunch. *Hackett*, 2012 IL 111781, ¶ 20; *Close*, 238 Ill. 2d at 505. In addition, a police officer is not required to rule out all possibility of innocent behavior before he initiates a *Terry* stop. *Close*, 238 Ill. 2d at 511-12. In judging a police officer's conduct, a court will apply an objective standard and will determine whether the facts

7

available to the officer at the moment of the seizure would lead an individual of reasonable caution to believe that the action taken by the officer was appropriate. *People v. Colyar*, 2013 IL 111835, ¶ 40; *Hackett*, 2012 IL 111781, ¶ 20; *Close*, 238 Ill. 2d at 505.

¶ 17    In the present case, after having reviewed the record, we find that Deputy Pilat had reasonable suspicion to make an investigatory stop of defendant's vehicle for a possible criminal trespass to real property. The evidence presented at the suppression hearing indicated that Pilat was responding to a live complaint of a very recent criminal trespass to real property; that the complainant, O'Hern, alleged that someone was trespassing and running dogs on his property; that the complainant took Pilat to the exact location of the trespass; that while at or near that location, O'Hern and Pilat came across one vehicle in the area; and that the vehicle in question had a dog box in the back of it with animals inside of it. Based upon those specific, articulable facts, Pilat had reasonable suspicion to stop defendant and to inquire further about the possible trespass violation. See 725 ILCS 5/107-14 (West 2010); *Hackett*, 2012 IL 111781, ¶ 20; *Close*, 238 Ill. 2d at 505. After the proper investigatory traffic stop took place, Pilat learned that defendant's driver's license was suspended or revoked and properly arrested defendant for that violation. Both the investigative stop and subsequent arrest were proper. The trial court, therefore, correctly denied defendant's motion to suppress evidence.

¶ 18    In reaching that conclusion, we must comment upon defendant's assertion—that evidence of notice was required for the police officer to have reasonable suspicion to believe that a criminal trespass to real property had occurred. Contrary to defendant's suggestion, we need not look to the case law of other states to answer this question because our supreme court has already ruled on this issue, albeit in a different context. When faced with that question in the context of other offenses, our supreme court has repeatedly held that a police officer may make a lawful

8

*Terry* stop without first determining whether the circumstances he observed would satisfy each element of a particular offense. See, *e.g.*, *Hackett*, 2012 IL 111781, ¶ 28; *Close*, 238 Ill. 2d at 510. Applying that rule in this particular case, Deputy Pilat was not required to have evidence that the notice element of criminal trespass to real property was satisfied before he could make an investigatory stop on defendant's vehicle to investigate a possible commission of that offense. See *id*. While evidence of notice may be required for a person to be found guilty of committing some forms of criminal trespass to real property (see 720 ILCS 5/21-3(a)(2), (a-5), (b) (West 2010)), it is not required for a police officer to have reasonable suspicion to investigate whether a criminal trespass to real property has been committed. See *id*. We reject defendant's assertion to the contrary.

¶ 19 Having found that the trial court properly denied defendant's motion to suppress, we need not address the alternative assertion made by the State in support of its argument—that the encounter between the officer and defendant in this case was a consensual encounter. We make no ruling on that specific assertion.

¶ 20                                   CONCLUSION

¶ 21 For the foregoing reasons, we affirm the judgment of the circuit court of McDonough County.

¶ 22       Affirmed.

9