NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200256-U

NO. 4-20-0256

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 18, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Coles County |
| TANYA PENCE, | ) | No. 18CF674 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Glenn, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1  *Held:*  The appellate court affirmed the trial court's judgment because the trial court correctly denied defendant's motion to suppress evidence.

¶ 2  In November 2018, the State charged defendant, Tanya Pence, with one count of driving while license suspended or revoked, a Class 4 felony, in violation of section 6-303(d-3) of the Illinois Vehicle Code. 625 ILCS 5/6-303(d-3) (West 2016).

¶ 3  In December 2018, defendant filed a motion to suppress evidence in which she stated that the officer who had stopped her vehicle did so because he "believed [defendant] failed to signal when required." However, defendant argued that she had, in compliance with the law, "signaled an intention to turn more than 100 feet prior to turning."

¶ 4  In January 2019, the trial court conducted a hearing on defendant's motion to suppress evidence and denied defendant's motion.

¶ 5        In June 2020, the trial court conducted defendant's stipulated bench trial at which the court found defendant guilty. The court sentenced defendant to 24 months of probation and 180 days in jail, with an additional 30 days of work release and 120 days of jail stayed pending compliance with probation.

¶ 6        Defendant appeals, arguing that the trial court erroneously denied defendant's motion to suppress because she did not violate any traffic laws and the stop was premised on either (1) the officer's mistake of law or (2) the officer's mistake of fact. We disagree and affirm.

¶ 7                              I. BACKGROUND

¶ 8                              A. The Charge

¶ 9        In November 2018, the State charged defendant with one count of driving while license suspended or revoked, a Class 4 felony, in violation of section 6-303(d-3) of the Illinois Vehicle Code. *Id.*

¶ 10                          B. The Motion To Suppress

¶ 11       In December 2018, defendant filed a motion to suppress evidence in which she stated that the officer who had stopped her vehicle did so because he "believed [defendant] failed to signal when required." However, defendant argued that she had, in compliance with the law, "signaled an intention to turn more than 100 feet prior to turning."

¶ 12       In January 2019, the trial court conducted a hearing on defendant's motion to suppress.

¶ 13       Clint Lawrence testified that he was an officer with the Mattoon Police Department and had been so employed for "[a] little over two years." When asked about his training and background, Lawrence responded, "I've been through police academy, as every officer is required to do so, and I'm a patrolman for the city of Mattoon."

¶ 14        Lawrence testified that on August 24, 2018, at around 12:44 in the afternoon, he was on duty and located around "the 2500 block of Pine." He testified, "I observed a white SUV traveling on Pine westbound, and when it got to the area—approached the intersection of 32nd and Pine, it failed to signal within the required distance." Lawrence was located directly behind the white SUV when he observed this. Lawrence further testified, as follows:

> "I've conducted numerous traffic stops over the little over two years that I've been there, and I'm familiar with the hundred foot rule. I've taken, numerous times, taken a measuring wheel. That's kind of how we set a guideline for when we use that as a, you know, probable cause to make a stop on a vehicle. I measured off a hundred feet of that on numerous occasion [*sic*]."

Lawrence testified that he stopped the SUV and identified the driver as defendant. While speaking with Lawrence, defendant acknowledged that her license was revoked.

¶ 15        Lawrence further testified that he later reviewed a video of the stop and determined that based on "a change in color in the pavement," he was able to determine where he first saw the turn signal. Lawrence explained that he "went to that area and that's where [he] took [his] measuring wheel, measured from that area to the stop sign, and it was 88 feet."

¶ 16        Brian Marxman testified that he was a licensed private investigator and had been working in that capacity for approximately eight years. Before his job as a private investigator, he worked for "28 years for the Illinois Department of Transportation, traffic division, and [he] also worked 24 years on the side as law enforcement." Marxman explained that he worked for multiple agencies but the last offices he worked with were the Fayette County Sheriff's Office and Farina City Police Department.

¶ 17        Marxman testified that he measured the distance between where defendant signaled

and the stop sign and that measurement showed that the distance was 120 feet. Marxman based his measurement on "more distinctive markings" near where defendant signaled, such as a tree and steps to a house that are visible in the video. Marxman also testified that defendant did not turn until after the car's back wheels were beyond the stop sign. Marxman annotated a map of the area to show his measurements.

¶ 18    The court took judicial notice that the property lot widths in the area are 50 feet.

¶ 19    The trial court denied defendant's motion to suppress. In coming to its conclusion, the court noted that Lawrence was experienced "in determining distances," and "he was aware of the 100-foot turn signal rule." The court continued, "He has articulated his judgment at the time of the occurrence based on his experience and training, that the defendant's vehicle violated the law by not illuminating her turn signal within 100 feet of the turn." The court decided that "whether or not the distance was 88 feet or 120 feet or some other distance, that does not negate the reasonable suspicion that he had at the time of the occurrence."

¶ 20                    C. Defendant's Stipulated Bench Trial

¶ 21    In June 2020, the trial court conducted defendant's stipulated bench trial. The parties stipulated that, if called to testify, Lawrence would testify consistently with his testimony at the hearing on defendant's motion to suppress evidence.

¶ 22    The court found defendant guilty. The court sentenced defendant to 24 months of probation and 180 days in jail, with an additional 30 days of work release and 120 days of jail stayed pending compliance with probation.

¶ 23    This appeal followed.

¶ 24                    II. ANALYSIS

¶ 25    Defendant appeals, arguing that the trial court erroneously denied defendant's

motion to suppress because she did not violate any traffic laws and the stop was premised on either (1) the officer's mistake of law or (2) the officer's mistake of fact. We disagree and affirm.

¶ 26          A. The Trial Court Correctly Denied Defendant's Motion to Suppress

¶ 27                              1. *The Law*

¶ 28          All persons enjoy the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. "[T]he touchstone of the fourth amendment is reasonableness, which is measured objectively by examining the totality of the circumstances surrounding a police officer's encounter with a citizen." (Internal quotation marks omitted.) *People v. Dunmire*, 2019 IL App (4th) 190316, ¶ 39, 160 N.E.3d 113.

¶ 29          In *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 28, 153 N.E.3d 1012, this court recently summarized the law of *Terry* stops as follows:

" 'In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court provided an exception to the warrant and probable cause requirements.' *People v. Walker*, 2013 IL App (4th) 120118, ¶ 33, 995 N.E.2d 351. 'Pursuant to *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime.' *People v. Timmsen*, 2016 IL 118181, ¶ 9, 50 N.E.3d 1092. A *Terry* stop 'must be justified at its inception, and the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' (Internal quotation marks omitted.) *People v. Colyar*, 2013 IL 111835, ¶ 40, 996 N.E.2d 575. *** 'The officer's conduct is judged by an objective standard, which analyzes whether the facts available to the officer *at the moment of the stop* justify the action taken.' *People v. Hill*, 2019 IL App (4th)

- 5 -

180041, ¶ 17, 123 N.E.3d 1236." (Emphasis added.)

¶ 30 A reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence and "obviously less" than that necessary for probable cause. *Navarette v. California*, 572 U.S. 393, 396 (2014). As such, police officers "may make a lawful *Terry* stop without first determining whether the circumstances [they] observed would satisfy each element of a particular offense." *People v. Little*, 2016 IL App (3d) 130683, ¶ 18, 50 N.E.3d 655. Even the higher standard of probable cause "concerns the probability of criminal activity, rather than proof beyond a reasonable doubt." *People v. Grant*, 2013 IL 112734, ¶ 11, 983 N.E.2d 1009. "Indeed, probable cause does not even demand a showing that the belief that the suspect has committed a crime be more likely true than false." *People v. Wear*, 229 Ill. 2d 545, 564, 893 N.E.2d 631, 643 (2008) *abrogated on other grounds by Lange v. California*, 594 U.S. __, 141 S.Ct. 2011 (2021).

¶ 31 When considering a motion to suppress, the trial court's focus is not on whether an offense was actually committed but whether an arresting officer reasonably suspected at the time of the stop that criminal activity was taking place or about to take place. *Dunmire*, 2019 IL App (4th) 190316, ¶ 42. "In reviewing a trial court's ruling on a motion to suppress, the trial court's findings of historical fact are reviewed only for clear error, giving due weight to any inferences drawn from those facts by the fact finder, and reversal is warranted only when those findings are against the manifest weight of the evidence." *People v. Hackett*, 2012 IL 111781, ¶ 18, 971 N.E.2d 1058. However, "[a] trial court's ultimate legal ruling as to whether suppression is warranted is subject to *de novo* review." *Id.*

¶ 32 2. *This Case*

¶ 33 First, defendant argues that Lawrence stopped defendant based upon a mistake of

law. The law at issue is section 11-804(b) of the Illinois Vehicle Code (625 ILCS 5/11-804(b) (West 2016)), which reads as follows:

> "A signal of intention to turn right or left, change lanes, otherwise turn a vehicle from a direct course, move right or left upon a highway, or when required must be given continuously during not less than the last 100 feet traveled by the vehicle within a business or residence district, and such signal must be given continuously during not less than the last 200 feet traveled by the vehicle outside a business or residence district."

¶ 34 Defendant's only evidence that Lawrence stopped defendant based upon a mistake of law is quite flimsy. Defendant points out that when Lawrence returned to the scene to measure how far defendant signaled before the turn, he measured from the point the signal activated to the stop sign and came away with a measurement of 88 feet. Defendant argues that the proper measurement point was not the stop sign but, instead, where the vehicle turned. Defendant is correct. See *id.* However, Lawrence also testified he was familiar with the 100-foot rule and had conducted numerous traffic stops.

¶ 35 The trial court was able to assess all of this evidence and concluded that Lawrence stopped defendant based upon reasonable suspicion. The court decided that "whether or not the distance was 88 feet or 120 feet or some other distance, that does not negate the reasonable suspicion that he had at the time of the occurrence." The trial court correctly determined that even if Lawrence estimated incorrectly, the difference in the distance did not transform an otherwise reasonable suspicion into an unreasonable one.

¶ 36 Second, defendant argues that Lawrence stopped defendant based upon a mistake of fact. Defendant's argument rests largely upon information not known to Lawrence at the time

he stopped defendant. Defendant states that a more accurate measurement showed that defendant signaled 120 feet before turning, instead of the 88 feet that Lawrence measured after the fact. However, neither measurement served as the basis for the stop. Instead, Lawrence stopped defendant based upon his best estimate—in accordance with his experience and training—of the distance. "What happens after a stop has been made is irrelevant to the question of whether it was justified *at its inception*." (Emphasis in original.) *Dunmire*, 2019 IL App (4th) 190316, ¶ 44. Even if the true distance was 120 feet, Lawrence's estimate that was the predicate for the stop would have been reasonable. No officer is required to use a measuring wheel or tape measure prior to initiating a stop that requires only reasonable suspicion. The true distance was not so different from Lawrence's estimate to render his suspicion unreasonable under the circumstances.

¶ 37        The trial court considered Lawrence's estimation and compared it to his later measurement and Marxman's measurement. The court determined that Lawrence's estimate that defendant signaled less than 100 feet before the stop supported his reasonable suspicion. We see no good reason to second guess that decision.

¶ 38        Last, we note that defendant argues that this case is like *People v. Haddad*, 2021 IL App (3d) 180545, ¶ 17, in which the Third District assessed whether an officer had reasonable suspicion to conduct a stop based upon the defendant's car following the car in front of it "at a distance that was not reasonable and prudent." The officer estimated the distance was 18 feet. The trial court determined that the officer's estimation was unreasonable because he determined the distance "without, for example, explaining the relationship in time and/or space measured by when the vehicle passed stationary landmarks, such as light poles or dotted lines, and the time defendant's vehicle reached the same landmarks." *Id.* ¶ 20.

¶ 39        However, we conclude that *Haddad* only came to the conclusion that it did because

it was "[g]iving deference to the trial court's findings." *Id.* ¶ 21. In this case, we also defer to the trial court's findings, despite the fact that the trial court in this case reached a different conclusion than the trial court in *Haddad*. Similar facts can produce different conclusions *because* of the deferential standard employed in *Haddad* and in this case. The *Haddad* court correctly deferred to the trial court's finding that the officer's reasonable suspicion was suspect, and for the same reasons, we defer to the trial court's finding in this case that Lawrence's reasonable suspicion was *not* suspect.

¶ 40 The trial court's conclusion that Lawrence had reasonable suspicion to conduct a traffic stop upon defendant's vehicle was supported by the evidence presented. Accordingly, we affirm its judgment.

¶ 41 III. CONCLUSION

¶ 42 For the reasons stated, we affirm the trial court's judgment.

¶ 43 Affirmed.