# Illinois Official Reports

## Appellate Court

---

### *People v. Lomeli*, 2017 IL App (3d) 150815

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FABIAN LOMELI, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0815 |
| Filed | December 15, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 15-TR-16380; the Hon. Daniel L. Kennedy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Josette Skelnik, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Lawrence M. Bauer, and Nicholas A. Atwood, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justices Lytton and Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1    The defendant, Fabian Lomeli, appeals his conviction for driving on a suspended license, arguing that the court erred in granting the State's motion for directed finding at the close of the defendant's evidence during a motion to suppress.

¶ 2    FACTS

¶ 3    On March 11, 2015, the defendant was issued traffic citations for having an obstructed windshield (625 ILCS 5/12-503(c) (West 2014)) and driving on a suspended license (625 ILCS 5/6-303(a) (West 2014)). The defendant filed a motion to quash arrest and suppress evidence, alleging that Officer Shaughnessy did not have a sufficient basis for a traffic stop where he "unreasonably determined the object reportedly hanging from the Defendant's rearview mirror was a material obstruction." A hearing on the motion was held on September 21, 2015. Shaughnessy testified that on March 11, 2015, he was a patrol officer for the City of Joliet and was on duty around 8 p.m. It was dark, and he observed a vehicle in front of him. He followed the vehicle for a block or two and observed an object hanging from the rearview mirror. He did not recall what the object was. He initiated a traffic stop based on the object suspended in the rearview mirror. Shaughnessy went to the defendant's passenger side window and asked the defendant for his driver's license and insurance. The defendant gave Shaughnessy his firearm owner's identification card. Shaughnessy ran the defendant's information and found that the defendant had a suspended license. He then issued the defendant citations for having an obstructed windshield and driving on a suspended license. The following exchange took place:

> "[DEFENSE COUNSEL]: What is a material obstruction?
>
> [SHAUGHNESSY]: A material obstruction is something that blocks the view of the driver.
>
> [DEFENSE COUNSEL]: Is everything that hangs and is between the driver and the windshield a material obstruction?
>
> [SHAUGHNESSY]: No.
>
> [DEFENSE COUNSEL]: Have you had any training on what is and what is not a material obstruction?
>
> [SHAUGHNESSY]: No."

¶ 4    Shaughnessy was shown photographs of the vehicle and the windows. After viewing the photographs, he stated that there was slight tinting to the back and side windows. He noted that in the windshield was a rosary and an I-Pass. He agreed that the rosary was the item he had observed hanging from the rearview mirror. Defense counsel asked Shaughnessy how big the rosary was, and Shaughnessy replied that it was "[n]ot very big," and approximately "[a] half inch" thick. On cross-examination, the following exchange occurred:

> "[STATE]: Officer, you observed a vehicle with what reasonably appeared to be an obstruction in his windshield?
>
> [SHAUGHNESSY]: I did.
>
> [STATE]: In your mind that day it was reasonable to you?
>
> [SHAUGHNESSY]: Yes."

¶ 5 The defendant testified that he took the pictures of the windshield and the vehicle that were previously shown to Shaughnessy and stated that they fairly and accurately portrayed the vehicle as it had been on March 11, 2015. The defendant said the rosary was a circle of beads with a single strand necklace at the bottom. He stated that the rosary hung down about halfway between the rearview mirror and the dashboard and was "[a] few centimeters" wide. At the close of the defendant's evidence, the State moved for a directed finding, arguing that the defendant did not meet his burden of showing a *prima facie* case that the stop was unreasonable. The court granted the motion, stating, "Reasonable articulable suspicion that criminal activity is afoot. There was no testimony that it was a hunch or a fishing expedition here."

¶ 6 The case immediately proceeded by way of a stipulated bench trial with the evidence presented at the suppression hearing. The State further introduced the defendant's driving abstract, showing that his license was suspended on March 11, 2015. The court found the defendant guilty of driving on a suspended license and not guilty of having an obstructed windshield. He was sentenced to 24 months' court supervision, 240 hours of community service, and $350 in monetary assessments.

¶ 7                                    ANALYSIS

¶ 8 On appeal, the defendant argues that "[t]he trial court erred in denying the defendant's motion to suppress evidence because no reasonably objective officer could have believed the object hanging from the rear view mirror of the car the defendant was driving materially obstructed the driver's view."

¶ 9 Both the defendant and the State advocate for the two-part standard of review ordinarily employed when reviewing a circuit court's ruling on a motion to suppress. However, as the court did not just grant or deny the motion to suppress, but instead granted the State's motion for a directed finding, the standard is different.

¶ 10 When proceeding on a motion to suppress, the defendant must make a *prima facie* case of an unlawful search or seizure. *People v. Mott*, 389 Ill. App. 3d 539, 542 (2009). If the defendant makes a *prima facie* case, the burden shifts to the State to present evidence justifying the search or seizure. *Id.*

> "However, as here, when the denial of a motion to quash arrest and suppress evidence is based on the grant of a motion for directed finding, 'the trial court does not view the evidence [in the light] most favorabl[e] to the [nonmovant] but, rather, (1) determines whether the [nonmovant] has made out a *prima facie* case, then (2) weighs the evidence, including that which favors the [movant].' *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 311 (2000); see also 735 ILCS 5/2-1110 (West 2008). The trial court's decision will only be reversed if it is against the manifest weight of the evidence." *People v. Green*, 2014 IL App (3d) 120522, ¶ 28.

In sum, though we use a bifurcated standard of review when reviewing a ruling on a motion to suppress, we review the circuit court's grant of a motion for directed finding during a motion to suppress under the manifest weight of the evidence standard.

¶ 11 "A police officer may conduct a brief, investigatory stop of a person where the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *People v. Hackett*, 2012 IL 111781, ¶ 20. The

officer's belief that the intrusion is warranted must amount to more than a hunch, but " 'need not rise to the level of suspicion required for probable cause.' " *Id.* (quoting *People v. Close*, 238 Ill. 2d 497, 505 (2010)).

¶ 12  We find *Hackett* particularly applicable in this case. In *Hackett*, a police officer was driving behind the defendant and noticed the defendant's vehicle slightly cross into the other lane on two separate occasions. *Id.* ¶ 12. The officer pulled the defendant over and ultimately charged him with aggravated driving under the influence of alcohol and aggravated driving while license revoked. *Id.* ¶ 1. The defendant filed a motion to quash arrest and suppress evidence, arguing that the officer lacked probable cause to effectuate a traffic stop. *Id.* The circuit court granted the motion, holding that the "defendant's 'momentary crossings' of a highway lane line did not give the officer 'reasonable grounds' to make the stop," and the appellate court affirmed. *Id.*

¶ 13  On appeal, the supreme court reversed. *Id.* In doing so, the court considered the difference between reasonable, articulable suspicion and probable cause. The court noted that in order to establish probable cause that the defendant had committed a violation of the improper lane usage statute, the officer would have had to point to facts to support a reasonable belief that the defendant had violated each element of the statute: (1) that he had deviated from his lane, and (2) that it was not practicable for him to have remained in his proper lane. *Id.* ¶ 27. However, the court stated that "a traffic stop may be justified on something less than probable cause. A police officer can effect a lawful *Terry* stop [*Terry v. Ohio*, 392 U.S. 1 (1968)] without first 'considering whether the circumstances he or she observed would satisfy each element of a particular offense.' " *Id.* ¶ 28 (quoting *Close*, 238 Ill. 2d at 510). Therefore, the court held:

> "Where, as here, a police officer observes multiple lane deviations, for no obvious reason, an investigatory stop is proper. For probable cause and conviction, there must be something more: *affirmative* testimony that defendant deviated from his proper lane of travel *and* that no road conditions necessitated the movement. An investigatory stop in this situation allows the officer to inquire further into the reason for the lane deviations, either by inquiry of the driver or verification of the condition of the roadway where the deviation occurred." (Emphases in original.) *Id.*

¶ 14  Section 12-503(c) of the Illinois Vehicle Code (Code) states, in pertinent part, "No person shall drive a motor vehicle with any objects placed or suspended between the driver and the front windshield *** which materially obstructs the driver's view." 625 ILCS 5/12-503(c) (West 2014). Therefore, as in *Hackett*, in order for a police officer to have *probable cause* that a violation had occurred, the officer would have to point to specific facts to support a reasonable belief that the defendant had violated each element of the offense: (1) that the defendant was driving a vehicle with an object placed or suspended between him and the windshield, (2) that the object obstructed the driver's view, and (3) such obstruction was material. *Id.* However, an officer may conduct an investigatory stop with reasonable, articulable suspicion, which is less than probable cause, and "without first determining whether the circumstances he observed would satisfy each element of a particular offense." *People v. Little*, 2016 IL App (3d) 130683, ¶ 18. The stop then allows the officer to further investigate "to either confirm or dispel [his] suspicion" that the offense occurred. *Id.* ¶ 16.

¶ 15  Here, Shaughnessy observed an object hanging from the defendant's rearview mirror that he stated he reasonably believed to be an obstruction. In granting the State's motion for directed finding, the court found that Shaughnessy had a reasonable, articulable suspicion that

the defendant had committed a traffic violation, stating: "Reasonable articulable suspicion that criminal activity is afoot. There was no testimony that it was a hunch or a fishing expedition here." Based on the evidence, we cannot say that such a decision was against the manifest weight of the evidence.

¶ 16 In coming to this conclusion, we note that it is not necessary for us to determine whether Shaughnessy reasonably believed the obstruction was material at the time he initiated his investigatory stop. "The answer to that particular question would only be implicated when determining whether [the officer] had probable cause to cite defendant for a violation" of section 12-503(c) of the Code, which is not a question before us on appeal. *People v. Lubienski*, 2016 IL App (3d) 150813, ¶ 16. The stop in this situation simply allowed Shaughnessy to investigate further into the obstruction hanging from the defendant's rearview mirror.

¶ 17                                         CONCLUSION

¶ 18 The judgment of the circuit court of Will County is affirmed.

¶ 19 Affirmed.