NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 220624-U

NOS. 4-22-0624, 4-22-0851 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 22, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| GEORGE J. WHITE, | ) | No. 14CF1231 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Brendan A. Maher, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court (1) affirmed the trial court's first-stage dismissal of defendant's postconviction petition, (2) found the trial court did not abuse its discretion in staying the proceedings addressing defendant's petitions during this appeal's pendency, and (3) remanded for further proceedings on defendant's pending petitions and motions.

¶ 2     Defendant, George J. White, was convicted of multiple counts of aggravated driving under the influence of alcohol (DUI) involving death and failing to report an accident involving death. He was sentenced to two consecutive 23-year sentences, to run concurrently with 3- and 4-year sentences for reckless homicide and other related traffic offenses. On direct appeal, defendant challenged only the sufficiency of the State's evidence regarding his identification, and the appellate court affirmed defendant's convictions and sentence. Defendant filed a postconviction petition, which the trial court dismissed at the first stage, finding the allegations "frivolous and patently without merit." Defendant appeals the dismissal.

¶ 3　　　　　Defendant filed a series of petitions and motions seeking relief pursuant to section 2-1401 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-1401 (West 2020)), both before and after appealing the dismissal of his postconviction petition. The trial court stayed all further proceedings pending resolution of his appeal. Defendant appeals the stay.

¶ 4　　　　　We have consolidated the appeals for disposition. The facts of the case are fully set forth in *People v. White*, 2021 IL App (2d) 170643-U, and we will refer only to those parts of the case relevant to the issues here.

¶ 5　　　　　　　　　　　I. BACKGROUND

¶ 6　　　　　　　　　　　A. The Charges

¶ 7　　　　　In July 2014, after a two-vehicle accident resulting in the death of David Logterman, the State charged defendant with reckless homicide (720 ILCS 5/9-3(a) (West 2014)), failure to report an accident involving death (625 ILCS 5/11-401(b) (West 2014)), aggravated driving after revocation (625 ILCS 5/6-303(d-3) (West 2014)), two counts of aggravated DUI (alcohol) involving death (625 ILCS 5/11-501(a)(2) (West 2014)), and two counts of aggravated DUI (combination of alcohol and drugs) involving death (625 ILCS 5/11-501(a)(5) (West 2014)).

¶ 8　　　　　　　　　　　B. The Trials

¶ 9　　　　　Defendant's first jury trial resulted in a mistrial in March 2016. Before his second trial, defendant filed numerous *pro se* motions, including one claiming his trial counsel was ineffective. In May 2016, defendant entered a written waiver of his right to counsel and expressed his desire to proceed *pro se*. In July 2016, defendant sought sanctions against the State for "failing to disclose 'field notes' of investigating officers, as required for homicides."

Defendant argued the destruction of "field notes" by the investigating officers, after preparing their reports, constituted both a statutory and due process violation.

¶ 10　　　　At the hearing on defendant's motion, Officer Sean Welsh of the Rockford Police Department (RPD) testified he responded to the scene of the accident. He testified that, during his 10 years with the RPD, during which he was involved in more than a dozen DUI investigations involving the death of another driver, he had never preserved his field notes in these investigations because it was not "common practice" or "within the policy of the [RPD]" to do so. Investigator John Wenstrom, who also reported to the accident scene, did not recall what he did with his field notes in this case, but he said he typically placed them in a locked collection container for destruction later. He did not recall saving field notes in other traffic fatality cases, but he did so for homicides. Wenstrom testified he wrote his report based off both his memory and field notes. The trial court found the officers destroyed their notes in violation of section 114-13 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code), which required law enforcement investigating "any homicide offense" to provide prosecuting authorities "all investigative material, including but not limited to reports, memoranda, and field notes *** concerning the homicide offense being investigated." 725 ILCS 5/114-13(b) (West 2016). As a remedy, the court permitted defendant to cross-examine the officers regarding the missing field notes at trial.

¶ 11　　　　Defendant also filed, *inter alia*, a *pro se* pretrial motion to preclude the State from introducing identification testimony based on a purportedly prejudicial and improper "show up" at the scene of the accident. The trial court denied this motion.

¶ 12　　　　Defendant represented himself during his second trial, and the jury ultimately found him guilty of 10 of the 13 counts: reckless homicide, aggravated leaving the scene of an

accident involving death or personal injury, aggravated DUI (alcohol), aggravated driving with a blood-alcohol concentration (BAC) of 0.08 or more, aggravated DUI (combination of alcohol and drugs or intoxicating compound or compounds), DUI, driving with a BAC of 0.08 or more, DUI (alcohol and drugs or intoxicating compound or compounds), driving with a drug, substance, or intoxicating compound in his breath, blood or urine, and driving while his driver's license was revoked.

¶ 13                              C. Posttrial Proceedings

¶ 14          In September 2016, while awaiting sentencing, defendant filed a *pro se* motion for a new trial, arguing the destruction of the field notes constituted a *Brady* violation. See *Brady v. Maryland*, 373 U.S. 83 (1963). He did not argue an overly suggestive "show up" tainted his identification. The motion concluded with a blanket claim of ineffective assistance of counsel "in the [first] jury trial and before the [second] jury trial."

¶ 15          Defendant subsequently retained private counsel for posttrial proceedings. Posttrial counsel adopted defendant's *pro se* motion and argued it before the sentencing hearing in April 2017. Counsel asserted the trial court's remedy was not sufficient because the alleged violation "effectively denied [defendant] his opportunity to a fair trial" and the court should have barred the testimony of Officer Welsh. The court denied the motion for a new trial.

¶ 16                              D. Sentencing

¶ 17          The trial court sentenced defendant to 23 years' imprisonment for failure to report an accident involving death after leaving the scene, to be served consecutively to a sentence of 23 years each for aggravated DUI involving death, aggravated DUI involving death (BAC of 0.08 or more), and aggravated DUI (combination of alcohol and drugs or intoxicating compound or compounds), which were to run concurrently with each other. Additionally, the court imposed

three-year sentences for reckless homicide and aggravated driving after revocation or suspension, which were concurrent with each other but consecutive to the other sentences.

¶ 18        In May 2017, defendant's counsel filed a motion to reconsider the sentence. The trial court denied the motion, and defendant appealed.

¶ 19                            E. Direct Appeal

¶ 20        On direct appeal, defendant argued the State failed to prove him guilty beyond a reasonable doubt. Defendant contended the State's evidence hinged on the testimony of two witnesses who identified him as the driver after observing him in a "highly suggestive" one-man show up. The appellate court upheld the witnesses' identification of defendant, found the evidence sufficient, and affirmed the trial court's judgment. *White*, 2021 IL App (2d) 170643-U, ¶¶ 30-40.

¶ 21                      F. Postconviction Proceedings

¶ 22        Defendant filed a postconviction petition on March 31, 2022, raising the following issues: (1) the police officers committed a *Brady* violation when they destroyed their field notes, (2) trial counsel provided ineffective assistance by "minimiz[ing] the significance" of the violation, and (3) appellate counsel was ineffective for failing to argue the trial court erred in denying defendant's motion to suppress the eyewitness identification. The trial court dismissed the postconviction petition at the first stage as frivolous and patently without merit in June 2022. Defendant appealed the dismissal.

¶ 23        Before and after filing his postconviction petition, defendant filed a series of documents seeking, among other things, relief from judgment pursuant to section 2-1401 of the Civil Code. See 735 ILCS 5/2-1401 (West 2020). In August 2022, while defendant's appeal from the dismissal of his postconviction petition was pending, the trial court stayed proceedings on all

other pending motions and petitions filed by defendant. The court also prohibited defendant from making additional filings until the appellate court's mandate issued in his postconviction petition appeal. Defendant appealed the order staying proceedings. This court consolidated the two appeals.

¶ 24                                    II. ANALYSIS

¶ 25        On appeal, defendant argues the trial court erred in dismissing his postconviction petition because his ineffective assistance of posttrial and appellate counsel claims had merit and the court's stay was an abuse of discretion. We address these claims in order.

¶ 26                        A. Postconviction Petition Dismissal

¶ 27        The Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1074-75 (2010). A proceeding under the Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. English*, 2013 IL 112890, ¶ 21, 987 N.E.2d 371. The defendant must show he suffered a substantial deprivation of his federal or state constitutional rights. *People v. Caballero*, 228 Ill. 2d 79, 83, 885 N.E.2d 1044, 1046 (2008).

¶ 28        The Act establishes a three-stage process for adjudicating a postconviction petition. *English*, 2013 IL 112890, ¶ 23. Here, defendant's postconviction petition was dismissed at the first stage, where the trial court's review is limited to determining whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022). The court's review at this stage is an independent assessment of the claims to determine whether they contain substantive merit. *People v. Harris*, 224 Ill. 2d 115, 125-26, 862 N.E.2d 960, 967 (2007). Our

supreme court has held "a *pro se* petition seeking postconviction relief under the Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209 (2009). A petition lacks an arguable legal basis when it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16. A petition lacks an arguable factual basis when it is based on a fanciful factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Hodges*, 234 Ill. 2d at 16-17. Issues barred by *res judicata* or forfeiture are deemed to be frivolous and patently without merit. See *People v. Blair*, 215 Ill. 2d 427, 453-56, 831 N.E.2d 604, 620-22 (2005).

¶ 29        "In considering a petition pursuant to [section 122-2 of the Act] the [trial] court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding[,] and any transcripts of such proceeding." 725 ILCS 5/122-2.1(c) (West 2022). The petition must be both verified by affidavit and supported by "affidavits, records, or other evidence supporting its allegations," or, if supporting documentation is not available, the petition must explain why. 725 ILCS 5/122-2 (West 2022); *People v. Collins*, 202 Ill. 2d 59, 67, 782 N.E.2d 195, 199 (2002). "The failure to comply with section 122-2 is fatal and by itself justifies the petition's summary dismissal." *Harris*, 224 Ill. 2d at 126. This includes a failure to attach the necessary supporting documents or adequately explain their absence. See *People v. Turner*, 187 Ill. 2d 406, 414, 719 N.E.2d 725, 730 (1999). Our review of the first-stage dismissal of a postconviction petition is *de novo*. *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 20, 963 N.E.2d 394. Moreover, we may affirm the dismissal of a postconviction petition on any basis supported by the record. *People v. Wright*, 2013 IL App (4th) 110822, ¶ 32, 987 N.E.2d 1051.

- 7 -

¶ 30                                     1. Brady *Violation*

¶ 31        First, defendant claims posttrial counsel provided ineffective assistance by failing to adequately present and argue the destruction of the field notes constituted a *Brady* violation and a due process violation. He also argues appellate counsel was ineffective for not raising these claims on direct appeal.

¶ 32        To establish ineffective assistance of counsel, a defendant must show deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "Specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366. "A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Veach*, 2017 IL 120649, ¶ 30. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy [either] of the prongs precludes a finding of ineffectiveness." (Internal quotation marks omitted.) *Veach*, 2017 IL 120649, ¶ 30. "[I]f the underlying claim has no merit, no prejudice resulted, and petitioner's claims of ineffective assistance of counsel at trial and on direct appeal must fail." *People v. Pitsonbarger*, 205 Ill. 2d 444, 465, 793 N.E.2d 609, 624 (2002).

¶ 33        "Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel." *People v. Childress*, 191 Ill. 2d 168, 175, 730 N.E.2d 32, 36 (2000). Appellate counsel renders ineffective assistance by failing to raise an issue on direct appeal if that failure was objectively unreasonable and the decision prejudiced the defendant. *People v. Easley*, 192 Ill. 2d 307, 328-29, 736 N.E.2d 975,

991 (2000). "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *Easley*, 192 Ill. 2d at 329. "Accordingly, unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal." *Easley*, 192 Ill. 2d at 329.

¶ 34 Defendant argues "the discovery violation was a due process violation and *** the trial court's remedy for the officers' statutory discovery violation was insufficient to cure the prejudice caused by the violation." More specifically, defendant contends posttrial counsel should have argued *Arizona v. Youngblood*, 488 U.S. 51 (1988), applies rather than *Brady*. Defendant insists the officers acted in bad faith when they did not preserve their field notes, which, defendant contends, should have warranted a greater sanction or an exclusion. Conversely, a *Brady* discovery violation does not require evidence of bad faith and might then justify a lesser sanction. Defendant argues posttrial counsel was ineffective for failing to argue the more serious federal due process claim. Essentially, defendant does not argue posttrial counsel failed to raise the issue but that he did not argue it strongly enough. He now argues appellate counsel was equally ineffective for failing to raise the issue on appeal.

¶ 35 There are several problems with defendant's claims. First, defendant raised the same claims in his *pro se* pretrial motions, and his retained posttrial counsel argued them on appeal. Defendant raised the claimed *Brady* violation in the trial court well before his second trial by way of several *pro se* pretrial motions. After defendant's first trial was declared a mistrial, defendant requested the investigating officers' field notes. When he did not receive them, he sought sanctions against the State for a purported *Brady* violation. His motion referenced both Illinois Supreme Court Rule 415 (eff. Oct. 1, 1971) and an alleged " 'due

process' violation under [*Youngblood*]," stating, "a discovery violation may be analyzed in one of two ways," either as a due process violation under *Youngblood*, or as a statutory discovery violation under Rule 415. See *Youngblood*, 488 U.S. 51; Ill. S. Ct. R. 415 (eff. Oct. 1, 1971). On August 24, 2016, the court conducted an extensive hearing on defendant's motion for sanctions, during which defendant argued both the statutory violation and due process claim.

¶ 36       Further, under the federal and Illinois constitutions, the applicability of *Youngblood* depends on whether the evidence is "material exculpatory" or "potentially useful." (Internal quotation marks omitted.) *People v. Kizer*, 365 Ill. App. 3d 949, 960, 851 N.E.2d 266, 274 (2006). If the contested evidence is material exculpatory, *Brady* applies, and no showing of bad faith is required. *Kizer*, 365 Ill. App. 3d at 960-61. If the evidence is potentially useful, the bad faith requirement in *Youngblood* applies. *Kizer*, 365 Ill. App. 3d at 960-61.

¶ 37       In *Illinois v. Fisher*, 540 U.S. 544, 545-48 (2004), the United States Supreme Court said the cocaine at issue was "potentially useful" when the State charged the defendant with possession of cocaine which was found to have been destroyed during the intervening 10 years, while defendant was a fugitive. The Supreme Court reasoned, at best, the defendant could hope a fifth test on the substance would have exonerated him. *Fisher*, 540 U.S. at 548. Here, defendant hoped the officers' field notes might have contained something of impeachment value. Thus, the field notes were "potentially useful" evidence. Unlike in *Fisher*, where there was no way to assess the potential value of the evidence due to its destruction, the officers here testified, both at the hearings on defendant's pretrial motions and at trial, that their reports were prepared directly from their notes. Officer Welch testified his field notes were "right next to" him when he wrote his report, and he acknowledged "everything that was included in those field notes [was] in [the] report." Officer Wenstrom said his report was written based on both his memory of the

event and his field notes. Considering the other evidence presented, the trial court found there was no bad faith in the officers' failure to retain the notes because their belief this case did not constitute a homicide case was not unreasonable.

¶ 38　　　　Because defendant argues on appeal that *Youngblood* should apply, it was his burden to establish bad faith. See *Kizer*, 365 Ill. App. 3d at 960-61. The trial court found there was no bad faith after listening to the officers and other witnesses and making credibility determinations regarding their explanations for not preserving their notes—factual findings we are reluctant to second guess from a cold transcript. When a defendant appeals the denial of a motion to suppress, "a circuit court's factual findings are reversed only if they are against the manifest weight of the evidence." (Internal quotation marks omitted.) *People v. Fields*, 2024 IL App (4th) 210194-B, ¶ 33. We do not find the trial court's findings to be against the manifest weight of the evidence. "A defendant who claims appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating such failure was objectively unreasonable and that counsel's decision prejudiced defendant." *People v. Rogers*, 197 Ill. 2d 216, 223, 756 N.E.2d 831, 835 (2001). In this context, "[u]nless the underlying issue has merit, a defendant cannot be considered to have suffered prejudice from appellate counsel's failure to brief that issue." *People v. Makiel*, 358 Ill. App. 3d 102, 113, 830 N.E.2d 731, 743 (2005). "Normally, appellate counsel's choices concerning which issues to pursue are entitled to substantial deference." *Rogers*, 197 Ill. 2d at 223. Here, defendant's claims have already been argued and addressed.

¶ 39　　　　Regarding defendant's *Brady* claim, it "requires a showing that: (1) the undisclosed evidence is favorable to the accused, be it either exculpatory or impeaching; (2) the evidence was suppressed by the State either willfully or inadvertently; and (3) the accused was

prejudiced because the evidence is material to guilt or punishment." *People v. Carballido*, 2015 IL App (2d) 140760, ¶ 66, 46 N.E.3d 309. Defendant failed to allege or prove any of these requisite elements to the trial court. His claim relied entirely on the officers' failure to preserve their notes under section 114-13(b) of the Criminal Procedure Code. Defendant did not show the notes contained exculpatory or impeaching information, the evidence was being suppressed intentionally or willfully, or that the evidence was material to either his guilt or possible punishment. He provides nothing further here to justify a different result on appeal.

¶ 40　　　　After hearing arguments, the trial court found the officers destroyed their field notes in violation of section 114-13(b), which requires the preservation of "all investigative material, including but not limited to reports, memoranda, and field notes" prepared by any law enforcement agency responsible for "investigating any homicide offense or participating in an investigation of any homicide offense." 725 ILCS 5/114-13(b) (West 2016). Finding the definition of "homicide" could include "reckless homicide" under the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2016)), the court concluded the officers' destruction of those notes after memorializing the notes' contents in their reports violated the statute. Defendant asked the court to exclude the officers' testimony regarding his identification at the scene, along with the testimony of one of the civilian witnesses who identified him, as a sanction. Instead, the court permitted defendant to cross-examine the officers about their failure to preserve their notes.

¶ 41　　　　Immediately before his second trial began, defendant filed a motion to reconsider, in which he reraised the purported statutory and due process violations, along with what he claimed were violations of RPD policy. The court repeated the reasons for its prior ruling and found the sanctions imposed were appropriate. After these lengthy and repetitive arguments, defendant elected not to ask the officers any questions about the destruction of their notes when

given the opportunity to do so. The irony was not lost on the trial court, nor is it lost on this court.

¶ 42                                  2. *Ineffectiveness of Posttrial Counsel*

¶ 43          Defendant argues posttrial counsel provided ineffective assistance by failing to argue his due process and discovery violation claims properly. Defendant asserts posttrial counsel should have amended his *pro se* motion "to allege that the officers' destruction of their notes amounted to both a statutory and due process violation." He also contends counsel should have appended the general orders the trial court found the officers to have technically violated. The record reveals posttrial counsel ultimately adopted defendant's *pro se* motion and argued it, addressing each of these points.

¶ 44          Contrary to defendant's claim on appeal, posttrial counsel contested the sufficiency of the sanction chosen by the court, asserting defendant was "asking for a new trial based upon the Court not barring the testimony of that officer and merely just allowing the defendant the right to cross examine him on that issue." Posttrial counsel also argued the failure to preserve investigative notes "effectively denied the defendant *** his opportunity to a fair trial." Under any reasonable interpretation, this is a due process claim. No amendment of the motion was necessary to assert a claim which had already been raised several times and was addressed in argument. Since the record belies defendant's claim in this regard, it was properly found to be "frivolous and patently without merit." A petition lacks an arguable legal basis, and is therefore frivolous, when it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16.

¶ 45          Defendant's argument that posttrial counsel was ineffective for failing to attach copies of the general orders of the RPD relating to note retention meets the same fate. The trial

court granted relief upon finding the officers violated section 114-13(b) of the Criminal Procedure Code. There is nothing in this record to indicate appending copies of the orders would have changed the court's ruling, and defendant does not provide argument to support a conclusion otherwise. Defendant got what he sought—just not to the extent he desired. Having done so, he elected not to use the sanction offered. Because defendant elected not to utilize the sanction provided, defendant cannot now claim he was prejudiced. He was successful in his motion and chose not to avail himself of the relief available. The trial court found "the overall evidence, the Court believes, was overwhelming with respect to [defendant's] convictions in the case having sat through and the jury having found he was guilty of 10 of the 13 charges in the case." To show prejudice, defendant asks us to review the same facts and find there is a reasonable possibility the outcome of his case would have been different. Unfortunately, because defendant elected not to avail himself of the remedy provided, there is nothing in the record to support his claim of prejudice.

¶ 46        Because we have found no error, defendant cannot raise the gist of a claim his appellate counsel's performance was deficient for failing to raise this issue on direct appeal and that the deficient performance prejudiced him. Absent prejudice, defendant cannot prevail on his ineffectiveness claim. "If the underlying claim has no merit, no prejudice resulted, and petitioner's claims of ineffective assistance of counsel at trial and on direct appeal must fail." *Pitsonbarger*, 205 Ill. 2d at 465.

¶ 47                              3. *Ineffectiveness of Appellate Counsel*

¶ 48        Next, defendant contends he established the gist of a constitutional claim his appellate counsel was ineffective for failing to argue on direct appeal the trial court erred when it denied defendant's motion to suppress the eyewitness identification. Defendant did not question

or object to posttrial counsel's argument or election to stand on his *pro se* petition when he was before the trial court. Defendant acknowledges he did not question the court's ruling in his own *pro se* posttrial motion, and he did not allege posttrial counsel was ineffective for failing to raise such a claim in his *pro se* postconviction petition now under review. Instead, he now asserts appellate counsel was ineffective for not alleging, on direct appeal, the trial court erred when it denied the motion.

¶ 49        Defendant has recycled the same arguments he raised previously regarding the show-up process heard and denied by the trial court twice, which were dispensed with on direct appeal. On direct appeal, defendant argued the State's evidence was insufficient because it was based on the testimony of two eyewitnesses who identified defendant in a one-person show up. Acknowledging "defendant filed a second amended motion to suppress identification evidence as unreliable," the Second District upheld the identification and affirmed. *White*, 2021 IL App (2d) 170643-U, ¶¶ 5, 30-40.

¶ 50        The appellate court considered all the alleged deficiencies defendant argues here, noting how, contrary to defendant's claims both on direct appeal and here, one-man show ups "have been consistently upheld when they are justified by the circumstances." *White*, 2021 IL App (2d) 170643-U, ¶ 30. Finding the identification of defendant as the driver by the only other people present at the scene was reliable, and considering each of the factors pursuant to *Neil v. Biggers*, 409 U.S. 188 (1972), the appellate court found that "[i]n addition to the witnesses' identification evidence, there was significant circumstantial evidence that defendant was driving the Impala at the time of the accident." *White*, 2021 IL App (2d) 170643-U, ¶ 38. The car was registered to defendant's girlfriend, defendant admitted to being the last person known to be in control of the car, the house at which defendant was found shortly after the accident was near the

site of the fatal crash, and the driver was observed walking away from the crash. When defendant was questioned, he said the car was missing but "did not seem concerned about the car or ask if it had been found." He complained of rib pain upon his arrest, and he started to cry when informed a person had died in the accident. Perhaps most importantly, defendant's wallet and identification were found in the front seat of the vehicle shortly after the collision. Further, the appellate court noted how defendant's BAC from a sample taken hours after the accident could have contributed to the accident, and the fact he could not be excluded as contributing to the DNA sample taken from the deployed driver's side airbag of the car weighed against him as well. *White*, 2021 IL App (2d) 170643-U, ¶ 38. The appellate court addressed the sufficiency of the evidence as it related to the eyewitness identification. We need not do so again.

¶ 51        Identifying our standard of review as *de novo*, defendant relitigates the motion before us. As we noted above, a *de novo* standard of review applies to the first-stage dismissal of a postconviction petition. *Dunlap*, 2011 IL App (4th) 100595, ¶ 20. Our review of a trial court's denial of a suppression motion would normally entail a bifurcated standard of review, but "when reviewing a ruling on a motion to suppress, we review the circuit court's grant of a motion for directed finding during a motion to suppress under the manifest weight of the evidence standard." *People v. Lomeli*, 2017 IL App (3d) 150815, ¶ 10, 95 N.E.3d 1215. Here, we are not relitigating the suppression hearing, but instead deciding whether defendant raised a sufficient claim of ineffective assistance to survive summary dismissal.

¶ 52        Defendant, through appointed counsel, filed a second amended motion to suppress identification on February 13, 2015, prior to his first trial. Based on an allegedly "unnecessarily suggestive" show-up procedure, defendant sought to suppress his identification. After a full evidentiary hearing, the trial court denied the motion. Defendant's counsel filed a motion for

reconsideration on April 3, 2015, referencing the evidence presented at the hearing and repeating his argument for why the show-up procedure was unnecessarily suggestive. The trial court denied the motion for reconsideration on May 22, 2015, stating:

> "I have reviewed the defendant's motion for reconsideration which was very, very thoroughly prepared and submitted to the Court. I then reviewed my notes from the hearing which took place on February 27 of this year, 2015. After review of those notes and consideration of the arguments made today, I believe the Court did make the proper ruling on February 27th, therefore, the motion for reconsideration is heard and denied."

¶ 53    On direct appeal, defendant argued the unreliability of eyewitness identification. The appellate court, considering all the facts and circumstances of the show up of which defendant continues to complain, found it to be reliable. Defendant continues to argue the show-up procedure was unnecessarily suggestive as a matter of law, relying on out-of-state authority the trial court declined to accept. We find no reason to believe on direct appeal the result would have been different had defendant argued the trial court erred in denying his suppression motion. When we consider the same evidence presented to the trial court and outlined by this court on direct appeal, the court's ruling was not against the manifest weight of the evidence. *Lomeli*, 2017 IL App (3d) 150815, ¶ 10. The issue upon which defendant seeks to rely for his ineffectiveness of appellate counsel claim has no merit, and without it, defendant suffered no prejudice from appellate counsel's failure to brief the issue. *Makiel*, 358 Ill. App. 3d at 113. As we have said before, absent error, there can be no valid ineffective assistance of counsel claim. See *People v. Hood*, 2016 IL 118581, ¶ 18, 67 N.E.3d 213. Defendant cannot establish the gist of a constitutional claim.

¶ 54                                B. The Stay

¶ 55        Finally, defendant argues the trial court abused its discretion when it stayed the

proceedings concerning his section 2-1401 pleadings pending the outcome of his appeal of the

summary dismissal of his postconviction petition. Our review of the trial court's stay is highly

deferential and will not be reversed absent an abuse of discretion. *Lisk v. Lisk*, 2020 IL App (4th)

190364, ¶ 22, 143 N.E.3d 1240.

¶ 56        The power of the trial court to issue a stay order is part of its inherent power to

control the disposition of cases before it. *In re Estate of Lanterman*, 122 Ill. App. 3d 982, 990,

462 N.E.2d 46, 51 (1984). "Where several actions are pending which involve substantially the

same subject matter, a court may stay the proceedings in one matter and see whether the

disposition of one action may settle the other." (Internal quotation marks omitted.) *Guarantee

Trust Life Insurance Co. v. Platinum Supplemental Insurance, Inc.*, 2016 Ill App (1st) 161612,

¶ 35, 68 N.E.3d 481.

¶ 57        Both the pending appeal and defendant's other pleadings arose out of the same

criminal case and involved some of the same issues or claims, even though defendant's section

2-1401 pleadings are civil in nature. In *Khan v. BDO Seidman, LLP*, 2012 IL App (4th) 120359,

¶ 62, 977 N.E.2d 1236, this court observed, "Typically, an appropriate exercise of a court's

discretion to enter a stay is a situation in which a ruling dispositive of a case is pending either in

the case in which a stay is under consideration or in a separate matter." (Internal quotation marks

omitted.) However, we said, the United States Supreme Court has made it clear the issues in the

two proceedings do not have to be identical. *Khan*, 2012 IL App (4th) 120359, ¶ 63 (citing

*Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). We held:

"[I]n order for a stay to be justified, the overlap between the case at hand and the pending appeal does not have to be complete such that resolution of the appeal is potentially dispositive; it is necessary only that the two proceedings share a significant issue, in contrast to an issue collateral to the case at hand. [Citation]. Unless the appeal is clearly frivolous, the circuit court should stay its proceedings for a reasonable length of time, until the appeal resolves the shared significant issue." (Internal quotation marks omitted.) *Khan*, 2012 IL App (4th) 120359, ¶ 74.

¶ 58    Here, defendant's appeal of the summary dismissal of his postconviction petition would impact the need to address some or all the pleadings pending before the trial court. As the trial court found in its order staying proceedings, "It is possible that the Appellate Court's [adjudication] of [defendant's] pending appeal would render the need to adjudicate his other currently pending motions moot."

¶ 59    In its detailed written order summarily dismissing defendant's postconviction petition at the first stage, the trial court laid out, among other things, the procedural history of this case since defendant's direct appeal. Between the time the Second District decided his direct appeal and the issuance of the mandate, defendant filed six *pro se* motions or petitions, including a section 2-1401 petition and accompanying motions, motions for status or to "recommence," motions for evidentiary hearings, a second petition to vacate his judgment/sentence under section 2-1401, and amended motions to vacate the judgment. After the mandate was issued and by the time the court issued the stay order, defendant had filed an additional eight motions or petitions seeking to either vacate the judgment, obtain relief from the judgment, or supplement or withdraw the posttrial motion, motions seeking default judgments, or motions for additional discovery or testing.

¶ 60       If defendant were successful on his postconviction proceedings, most, if not all, of the motions pending before the trial court would become moot and defendant would, at the least, be entitled to a new trial. On the other hand, if unsuccessful, as we have concluded here, defendant's petitions and motions remain pending before the trial court and may be resolved there. If defendant is not satisfied with the result, he can appeal anew.

¶ 61       Based upon this record, we conclude the trial court did not abuse its discretion when it granted a stay.

¶ 62                              III. CONCLUSION

¶ 63       For the foregoing reasons, we affirm the trial court's judgment and remand the matter for further proceedings on defendant's pending petitions and motions.

¶ 64       Affirmed; cause remanded.